IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS & BETTS POWER
SOLUTIONS, LLC d/b/a JT PACKARD

        Plaintiffs,

v.                                                    Case No.  10-CV-213

S.R. BRAY LLC d/b/a POWERPLUS!,
JAMES NOLDEN, SANDY SCHIELE, CHRIS
BLODGETT, JIM UHALT, SCOTT
BOWMAN, PATRICIA EPSTEIN, MICHELE
MARTIN, SHANE WOLFRAM, JENNIFER
WINGERT, SARAH SULLIVAN, KRISTI RUE,
SAMANTHA MOYES, JOHN ROIDT, and
BEN WAIT,

        Defendants.

**DEFENDANTS' COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
SECOND AMENDED STATEMENT OF RECORD FACTS AND THOSE FACTS
WHICH PLAINTIFF INTENDS TO PROVIDE AT EVIDENTIARY HEARING IN
SUPPORT OF ITS REQUEST FOR INJUNCTIVE RELIEF**

Defendants S.R. Bray LLC d/b/a Power Plus!, James Nolden, Sandy Schiele, Chris

Blodgett, Jim Uhalt, Scott Bowman, Patricia Epstein, Michele Martin, Shane Wolfram, Jennifer

Wingert, Sarah Sullivan, Kristi Rue, Samantha Moyes, John Roidt, and Ben Wait jointly respond

to plaintiff Thomas & Betts Power Solutions, LLC's Second Amended Statement of Record

Facts (the "PFOFs")[1] as follows:

---

[1]  The Court's April 21, 2010 Order [Dkt. 8] required plaintiff to serve its moving papers on defendants by April 27,
2010. Plaintiff did not serve its "Second Amended Statement of Record Facts" until April 28, 2010 and then only
served it by mail rather than via expedited delivery to defendants.  Section I-B of the Court's "Procedure to be
Followed on Motions for Injunctive Relief" (the "Standing Order") obligated plaintiff to serve defendants
"promptly" and gives the Court the right to deny the motion (Section I-C) when service is not effectuated in this
manner.  However the Court resolves the issue, defendants object to the Second Amended Statement of Record
Facts in its entirety as untimely.

## GENERAL OBJECTION

Throughout its Second Amended Statement of Record Facts, plaintiff uses the name "JT Packard" to refer to itself.  In fact, the plaintiff in this case is Thomas & Betts Power Solutions, LLC ("TBPS"), an entity which purchased the name JT Packard and now does business as JT Packard.  TBPS is not a successor to JT Packard & Associates, Inc. ("JPT") and defendants object to any and all efforts by TBPS to equate itself with JPT.

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| 1.  JT Packard is a Delaware limited liability company with its principal place of business at 5900 Eastport Blvd, Building V, Richmond, Virginia 23231.  JT Packard is a wholly-owned subsidiary of Thomas & Betts Corporation.  Thomas & Betts Corporation is the sole member and owns all the membership interests of JT Packard. (Declaration of Thomas Ward ("Ward Decl.") at ¶ 2; Supplemental Declaration of Thomas Ward ("Ward Supp Decl.") ¶ 1.)  Thomas & Betts Corporation is incorporated in the State of Delaware, and its principal place of business is located at 8155 T&B Boulevard, Memphis, Tennessee 38125.  Thomas & Betts Corporation is a citizen of the State of | 1.  **Objection**. Plaintiff's reliance on the Second Amended Complaint to support this factual proposition violates the Court's Standing Order (Section II-A-2(b) n.2) in that pleadings "are not evidence" and cannot be used as the source of evidence absent a stipulation between the parties.  Defendants have not stipulated, nor have they been asked to stipulate.  Subject to this objection, the proposed finding is nevertheless **disputed in part**. "JT Packard" is not the plaintiff; TBPS is the actual plaintiff.  In addition, Thomas & Betts Corporation is not incorporated in Delaware.  Its own website, www.t&b.com, reflects it is incorporated in Tennessee.  (T&B Website, Goode Decl. ¶ 2, Exh. A, Article V.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Tennessee for purposes of 28 U.S.C. § 1332(a). (2d Am. Cmplt. ¶ 2). JT Packard does business at 275 Investment Circle, Verona, Wisconsin 53593. (*Id.*) JT Packard is a large independent provider of critical power services to customers throughout the country. (See Ward Decl. at ¶ 2; Declaration of Chris Washburn ("Washburn Decl.") at ¶ 2.) JT Packard specializes in providing uninterruptible power services to a variety of commercial enterprises throughout the country. (See Ward Decl. at ¶2; Washburn Decl. at ¶2.) JT Packard's primary revenue stems from contracts to provide uninterruptible power service equipment, batteries, generators, and technical services to its customers. (Washburn Decl. at ¶ 2.) | |
| 2. JT Packard is, and at all times mentioned was, authorized to do business in Wisconsin. Ward Decl. ¶ 2. | 2. **Undisputed**. |
| 3. On January 26, 2010 JT Packard purchased substantially all of the operating | 3. **Objection**. The citation to the Ward Declaration does not support the proposed |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| assets of JT Packard & Associates, Inc.<br><br>(Ward Decl. at ¶ 3.) | finding and violates the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**. Plaintiff "purchased" nothing.  Thomas & Betts Corporation purchased certain assets of the now defunct JTP and then assigned them to the plaintiff.  (Bjelajac Decl. ¶¶ 6, 13-14, Exh. B, §§ 2.02, 6.07, 9.12, 2.04, 6.12.)  There is no competent evidence before the Court as to the assets purchased.  The citation to the Ward Declaration does not assert or otherwise support that it was "substantially all" of the operating assets of JTP.  In fact, plaintiff did ***not*** assume the employment contracts it seeks to enforce in this lawsuit.  (Bjelajac Decl. ¶¶ 13-14, Exh. B, §§ 2.04, 2.02, 6.07, 9.12, 6.12.) |
| 4.  POWERPLUS! is a Nevada limited | 4.  **Disputed in part**.  S.R. Bray LLC d/b/a |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| liability company whose principal place of business is located at 1210 N. Red Gum Street, in the City of Anaheim, California 92806. (Ward Decl. at ¶ 3.) POWERPLUS! conducts business within the State of Wisconsin. (*Id.*) POWERPLUS! provides temporary power solutions, including generators and power poles and utility consulting design and installation, to a wide variety of market segments including the utility, construction and event industries. POWERPLUS! is a direct competitor of JT Packard in the power services industry. (*Id.*). The members of POWERPLUS! are Steven R. Bray and Keith Bjelajac, who are both citizens of the state of California, for purposes of 28 U.S.C. § 1332(a). Am. Cmplt. ¶ 5. | Power Plus! ("SRB" or "Power Plus!") is a California limited liability company and Steven Bray is its sole member. (Bray Decl. ¶ 1.) |
| 5. NOLDEN is a citizen of Wisconsin, residing at 2947 Leadville Pass, Blue Mounds, WI 53517. (Ward Decl. at ¶ 9.) NOLDEN was employed by JT Packard & | 5. **Disputed in part**. James Nolden was not hired by JTP as Vice President of Equipment Sales and Business Development, but rather as the Director of Strategic Accounts. (Nolden |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Associates from approximately March 6, 2006 until January 26, 2010.  (*Id.*)  On March 6, 2006, JT Packard hired NOLDEN as Vice President of Equipment Sales and Business Development.  NOLDEN worked in JT Packard's Verona office in that capacity until his employment ended on January 26, 2010.  (*Id.*)  During his employment, NOLDEN's job duties as included, inter alia:  overall responsibility for equipment sales at JT Packard, including the supervision of four other Business Development Executives, soliciting and developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard.  NOLDEN directly supervised the sales force and reported directly to Steven R. Bray, the former President of JT Packard.  (*Id.*) | Decl. ¶ 2.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| 6.  SCHIELE is a citizen of Ohio, residing at 2830 Barharbor Ct., Lewis Center, OH, 43035.  (Ward Decl. at ¶ 10.)  SCHIELE reported in to JT Packard's Verona, Wisconsin location from approximately September 2, 2008 through March 24, 2010. (*Id.*)  On or about September 2, 2008, JT Packard hired SCHIELE as a Business Development Executive.  (*Id.*)  SCHIELE worked in JT Packard's Verona office in that capacity until her voluntary resignation on March 24, 2010.  (*Id.*)  During her employment, SCHIELE's job duties as Business Development Executive included general sales support, soliciting and developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard.  (*Id.*) | 6.  **Disputed in part**. Schiele's legal name is Sandra K. Hicks-Schiele. (Hicks-Schiele Decl. ¶ 1.)  In addition, Schiele began her employment at JTP on September 3, 2008 (not September 2, 2008) and did not end her employment with JTP on March 24, 2010. (Hicks-Schiele Decl. ¶¶ 2-5.) In fact, Schiele's employment with JTP ended on January 26, 2010 when JTP terminated her; Schiele's employment with plaintiff TBPS ended on March 23, 2010.  (Hicks-Schiele Decl. ¶¶ 2-5.)  While Schiele tendered her resignation with notice on March 23, 2010, TBPS ended her employment that day once it learned of her decision to leave the company. (Hicks-Schiele Decl. ¶ 5.)  In addition, Schiele's job duties at TBPS did not include "developing" or "maintaining" a list of TBPS clients, potential clients or contacts. (Hicks-Schiele Decl. ¶ 7.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| 7.  BLODGETT is a citizen of Wisconsin, residing at 16507 Oak Hill Trail, Muskego, WI 43150.  (Ward Decl. at ¶ 11.)  BLODGETT was employed by JT Packard from approximately August 15, 2005 to April 16, 2010.  (*Id.*)  On or about August 15, 2005, JT Packard hired BLODGETT for the position of Sales Application Engineer.  (*Id.*)  BLODGETT worked in JT Packard's Verona office until his voluntary resignation on April 16, 2010.  (*Id.*)  During his employment, BLODGETT's job duties as Sales Application Engineer included, inter alia: supporting client relationship with respect to technical expertise in various IT areas relating to the sales function, soliciting and developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT | 7.  **Disputed in part**. Blodgett's address is stated incorrectly. (Blodgett Decl. ¶ 2.) In addition, he was not hired as a Sales Application Engineer but rather as a field service technician.  (Blodgett Decl. ¶ 2.) Blodgett never "worked" at JTP's Verona facility, having always worked remotely for the company. (Blodgett Decl. ¶ 2.)  In addition, Blodgett's work for TBPS and JTP did not involve the solicitation of clients or other sales functions as he provided technical and engineering support for the sales force. (Blodgett Decl. ¶ 2.)  He also never maintained or developed a list of clients. (Blodgett Decl. ¶ 2.)  Blodgett's employment *with JTP* ended on January 26, 2010, not April 16, 2010. (Blodgett Decl. ¶ 4.)  His employment *with TBPS* ended on April 16, 2010. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Packard.  (*Id.*) | |
| 8.  UHALT is a citizen of Wisconsin, residing at 442 Ineichen Drive, Verona, WI 53593.  (Ward Decl. at ¶ 12.)  UHALT was employed by JT Packard from approximately July 23, 2008 through April 5, 2010.  (*Id.*)  On or about June 23, 2008, JT Packard hired UHALT for the position of Business Development Executive.  (*Id.*)  UHALT worked in JT Packard's Verona office until his voluntary resignation on April 5, 2010.  (*Id.*)  During his employment, UHALT's job duties as Business Development Executive included, inter alia:  soliciting and developing new client relationships; maintaining business relationships with existing clients (including property management firm clients, which are among JT Packard's largest clients); developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard.  (*Id.*) | 8.  **Disputed in part**. Uhalt worked for JTP between November 2005 and April 2007, at which time he left the company.  (Uhalt Decl. ¶ 2.)  He returned to JTP on June 23, 2008 and JTP terminated his employment on January 26, 2010.  (Uhalt Decl. ¶¶ 2-4.)  His employment with TBPS ended on or about April 6, 2010; plaintiff is incorrect to assert that his employment with JTP ended on April 5, 2010.  (Uhalt Decl. ¶ 6.)  Uhalt's job duties did not include "developing" or "maintaining" a list of clients, potential clients or contacts for JTP or TBPS.  (Uhalt Decl. ¶ 8.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| 9. BOWMAN is a citizen of Indiana, residing at 15068 Windsor Lane, Noblesville, IN 46060. (Ward Decl. at ¶ 13.) BOWMAN was employed in JT Packard's Verona, Wisconsin location from approximately July 25, 2006 through January 26, 2010. (*Id.*) On or about July 25, 2005, JT Packard hired BOWMAN as its Area Service Director. (*Id.*) BOWMAN worked remotely out of JT Packard's Verona office until his employment ended on January 26, 2010. (*Id.*) During his employment, BOWMAN's job duties as Area Service Director included, inter alia: the management of JT Packard's Regional Managers and field engineers (i.e, those employees who performing service and maintenance calls at customer sites) and the maintenance of relationship with the end-user clients. (*Id.*) | 9. **Disputed in part**. Bowman did not begin work for JTP on July 25, 2006 but on July 25, 2005. (Bowman Decl. ¶ 2.) He did not begin his employment with JTP as an Area Service Manager. (Bowman Decl. ¶ 2.) |
| 10. EPSTEIN is a citizen of Wisconsin, residing at 3463 Whytecliff Way, Sun Prairie, WI 53590. (Ward Decl. at ¶ 14.) EPSTEIN | 10. **Disputed in part**. JTP did not hire Epstein as its Director of Field Service Operations but as its Director of Service |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| was employed by JT Packard from approximately September 5, 2006 through January 26, 2010. (*Id.*) On or about September 5, 2006, JT Packard hired EPSTEIN as its Director of Field Service Operations. (*Id.*) EPSTEIN worked in JT Packard's Verona office until her employment ended on January 26, 2010. (*Id.*) During her employment, EPSTEIN's job duties as Director of Field Service included, inter alia: supervision of field service managers and field service engineers and serving as a customer liaison with respect to the services provided to customers by the field service engineers. (*Id.*) | Delivery. (Epstein Decl. ¶ 2.) Epstein's job duties are defined incorrectly in the proposed finding. In fact, Epstein had four direct reports who managed field service managers who, in turn, managed JTP's field service engineers. (Epstein Decl. ¶ 2.) In addition, Epstein was not a "customer liaison" for JTP but rather had "limited and infrequent customer contact with JTP's customers." (Epstein Decl. ¶ 2.) |
| 11. MARTIN is a citizen of Wisconsin, residing at 1804 Fjord Pass, Mount Horeb, 53572. (Ward Decl. at ¶ 15.) MARTIN was employed by JT Packard from approximately October 22, 2007 through February 24, 2010. (*Id.*) On or about October 22, 2007, JT Packard hired MARTIN as its Customer | 11. **Disputed in part**. Martin was not hired by JTP as its Customer Service Supervisor but rather as a Customer Service Agent-Team Lead. (Martin Decl. ¶ 2.) Martin's employment with JTP did not end on February 24, 2010 but on January 26, 2010 when JTP fired her. (Martin Decl. ¶¶ 3-4, 6.) Martin's |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Service Supervisor.  (*Id.*)  MARTIN worked in JT Packard's Verona office until her voluntary resignation on February 24, 2010.  (*Id.*)  During her employment, MARTIN 's job duties as Customer Service Supervisor included, inter alia:  supervision of 5-6 customer service representatives, and management of the emergency call center.  (*Id.*) | employment *with TBPS* ended on February 24, 2010. (Martin Decl. ¶¶ 4, 6.) |
| 12.  WOLFRAM is a citizen of Wisconsin, residing at 5206 Preservation Place, Sun Prairie, WI 53590.  (Ward Decl. at ¶16.)  WOLFRAM was employed by JT Packard from approximately October 20, 2008 through March 17, 2010.  (*Id.*)  On or about October 20, 2008, JT Packard hired WOLFRAM as its Director of Equipment Sales.  (*Id.*)  WOLFRAM worked in JT Packard's Verona office until his voluntary resignation on March 17, 2010.  (*Id.*)  During his employment, WOLFRAM's job duties as Director of Equipment Sales included, inter | 12.  **Disputed in part**.  Wolfram's employment with JTP began on October 15, 2008, not October 20, 2008.  (Wolfram Decl. ¶ 2.)  His employment *with JTP* ended on January 26, 2010, not on March 17, 2010.  (Wolfram Decl. ¶¶ 2-4.)  Wolfram's employment *with TBPS* ended on March 17, 2010, a date decided by TBPS, not Wolfram.  (Wolfram Decl. ¶ 6.)  Wolfram's job did not include "developing and maintaining lists of clients."  (Wolfram Decl. ¶ 8.)  Wolfram also did not "maintain" business relationships with existing clients as part of his day-to-day |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| alia: responsibility for power equipment sales, soliciting and developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard. (*Id.*) | duties. (Wolfram Decl. ¶ 8.) |
| 13. WINGERT is a citizen of Wisconsin, residing at 7328 Santa Fe Trail, Madison, WI 53719. (Ward Decl. at ¶ 17.) WINGERT was employed by JT Packard from approximately August 29, 2005 through March 23, 2010. (*Id.*) On or about August 29, 2005, JT Packard hired WINGERT as its Equipment Sales Coordinator. (*Id.*) WINGERT worked in JT Packard's Verona office until her voluntary resignation on March 23, 2010. (*Id.*) During her employment, WINGERT's job duties as Equipment Sales Coordinator included, inter alia: general sales support, soliciting and | 13. **Disputed in part**. Wingert was not employed by JTP through March 23, 2010. JTP terminated Wingert on January 26, 2010; Wingert and her new employer, TBPS, ended their relationship on March 23, 2010. (Wingert Decl. ¶¶ 3-4, 6.) JTP did not hire Wingert in 2005 as an Equipment Sales Coordinator; she began her career at JTP as a "Quoter." (Wingert Decl. ¶ 2.) Wingert's position did not involve soliciting or developing new clients or developing or maintaining lists of clients. (Wingert Decl. ¶ 2.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard. (*Id.*) | |
| 14.  SULLIVAN is a citizen of Wisconsin, residing at 239 Kelvington Drive, Sun Prairie, WI 53590.  (Ward Decl. at ¶ 18.) SULLIVAN was employed by JT Packard from approximately November 2, 2009 through March 24, 2010.  (*Id.*)  On or about November 2, 2009, JT Packard hired SULLIVAN for the position of Marketing Manager.  SULLIVAN worked in JT Packard's Verona office until her voluntary resignation on March 24, 2010.  (*Id.*)  During her employment, SULLIVAN's job duties as Marketing Manager included, inter alia: advertising and marketing on behalf of JT Packard at trade shows and on the internet, | 14.  **Disputed in part**. Sullivan did not work for JTP until March 24, 2010 but rather until January 26, 2010.  On that day, JTP terminated Sullivan's employment. On March 24, 2010, Sullivan's new employer, TBPS, and Sullivan ended their relationship. (Sullivan Decl. ¶¶ 2-5.)  Sullivan's job duties did not include "the generation of customer business." (Sullivan Decl. ¶ 7.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| creation of marketing materials, and the generation of customer business.  (*Id.*) | |
| 15.  RUE is a citizen of Wisconsin, residing at 4435 Pikes Peak Road, Ridegeway, WI 53582.  (Ward Decl. at ¶ 19.)  RUE was employed by JT Packard from approximately September 5, 2007 through March 30, 2010.  (*Id.*)  On or about September 5, 2007, JT Packard hired RUE as the Team Lead of Subcontractor Support.  RUE worked in JT Packard's Verona office until her voluntary resignation on March 30, 2010.  (*Id.*)  During her employment, RUE's job duties as Team Lead of Subcontractor Support included, inter alia:  coordination of subcontractors to fulfill primary service contracts with customers, including the selection, qualification, and bidding of subcontractors, and the negotiation of subcontractor business relationships.  (*Id.*) | 15.  **Disputed in part**. JTP did not retain Rue on September 5, 2007 as Team Lead of Subcontractor Support. In fact, Rue started at the company as a Service Support Specialist-Subcontractor Administrator.  (Rue Decl. ¶ 2.) In addition, Rue's employment with JTP did not run until March 30, 2010. Her employment with JTP ended on January 26, 2010.  (Rue Decl. ¶¶ 2-5.) |
| 16.  MOYES is a citizen of Wisconsin, residing at 119 Faircrest Court, Verona, WI 53593.  (Ward Decl. at ¶ 20.)  MOYES was | 16.  **Disputed in part**. JTP did not hire Moyes on April 4, 2005 as a Business Development Coordinator; she never held such a position. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| employed by JT Packard from approximately April 4, 2005 through April 1, 2010.  (*Id.*)  On or about April 4, 2005, JT Packard hired MOYES as the Business Development Coordinator.  (*Id.*)  MOYES worked in JT Packard's Verona office until her voluntary resignation on April 1, 2010.  (*Id.*)  During her employment, MOYES's job duties as Business Development Coordinator included, inter alia:  developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard.  (*Id.*) | (Moyes, Decl. ¶ 2.)  Moyes did work for JTP and later TBPS as a "Sales Assistant Business Development" where she provided administrative support for the sales team.  (Moyes Decl. ¶ 4.)  In addition, Moyes' job duties did not include developing new client relationships, maintaining business relationships with existing clients, or developing and maintaining lists of clients, potential clients and contacts.  (Moyes Decl. ¶ 4.)  Moyes's duties also did not include "creating goodwill" for either JTP or TBPS.  (Moyes Decl. ¶ 4.)  Finally, Moyes' employment with JTP ended on January 26, 2010, not April 1, 2010.  (Moyes Decl. ¶¶ 5-6, 8.)  TBPS hired Moyes after JTP fired her; she ended her employment with TBPS on April 1, 2010.  (Moyes Decl. ¶¶ 5-6, 8.) |
| 17.  ROIDT is a citizen of Wisconsin, residing at 2979 Door Creek Road, Stoughton, WI 53589.  (Ward Decl. at ¶ 21.)  ROIDT was employed by JT Packard from | 17.  **Disputed in part**. JTP did not hire Roidt as an Equipment Sales Consultant in 2005.  (Roidt Decl. ¶ 2.)  He also did not work for JTP until April 6, 2010.  Rather, JTP |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| approximately November 7, 2005 through April 6, 2010. (*Id.*) On or about November 7, 2005, JT Packard hired ROIDT as an Equipment Sales Consultant. (*Id.*) ROIDT worked in JT Packard's Verona office until his voluntary resignation on April 6, 2010. (*Id.*) During his employment, ROIDT's job duties as Equipment Sales Consultant included, inter alia: general sales support, soliciting and developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard. (*Id.*) | terminated Roidt on January 26, 2010; Roidt ended his employment with TBPS on April 6, 2010. (Roidt Decl. ¶¶ 3-4, 7.) Roidt's job duties did not involve developing and maintaining complete lists of clients, potential clients and contacts for JTP or TBPS; he did endeavor to keep track of the contact data for his customers. (Roidt Decl. ¶ 2.) |
| 18. WAIT was hired by JT Packard on June 4, 2003 as its Southeast Region Service Manager. WAIT is a citizen of Florida residing at 3779 Fiano Drive, Port Orange, Florida, and reported in through JT Packard's Verona, Wisconsin office. WAIT was | 18. **Disputed in part**. JTP did not hire Wait on June 4, 2003, but rather on June 6, 2003. (Wait Decl. ¶ 2.) Wait's employment with JTP did not end on April 23, 2010; it ended on January 26, 2010 when JTP terminated him. (Wait Decl. ¶¶ 3-4, 7.) After that date, Wait |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| initially hired in June 4, 2003, and he announced his resignation on April 19, 2010. His last day of employment was April 23, 2010. WAIT's job duties as Southeast Region Service Manager included the supervision and direction of field service engineers, including the assignment of field service engineers to service customer equipment, and maintenance of customer relationships with respect to field engineer service-related issues. (Ward Supp. Dec. ¶ 2.) | went to work for TBPS; his relationship with TBPS ended on April 21, 2010, not April 23, 2010. (Wait Decl. ¶¶ 3-4, 7.) Finally, JTP's 2003 retention of Wait was not in the capacity of Southeast Region Service Manager; he started with JTP as a Field Engineer. (Wait Decl. ¶ 10.) |
| 19. JT Packard has invested and continues to invest considerable resources to develop information, methods, and techniques to provide the services and products described above to customers throughout the country, and to price such services and equipment competitively. (Ward Decl. at ¶ 4.) All of that information is valuable, confidential, and proprietary to JT Packard, and is not generally known in the public domain. (*Id.*; | 19. **Objection**. In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status. *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Ward Supp. Decl. ¶¶ 6-7.) | protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**. Whether or not the information identified is "not generally known in the public domain," it is readily ascertainable by proper means by Power Plus! and its employees.  (Bray Decl. ¶¶ 7-9; Bjelajac Decl. ¶¶ 7-12.) |
| 20.  JT Packard employs sales employees and sales supports employees, including Business Development Executives, Sales Consultants, Business Development and Equipment Sales | 20.  **Objection**. In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Coordinators, Directors for Area and Field Services, Supervisors in the area of Customer Service, Sales Application Engineers, Sales Application Engineers, and Marketing Managers and Directors of Equipment Sales, whose job duties involve developing new clients for the company.  (Ward Decl. at ¶ 5.) These individuals are privy to and become intimately knowledgeable about, among other things, JT Packard's billing rates, unique pricing matrices that JT Packard created for itself, bid and quote procedures, the identity of our clients, including their unique business needs, their preferences and decision makers for third-party uninterruptible power services, their power services equipment inventory and service needs and history, subcontracting relationships to provide services relating to our service agreements.  (*Id.*)  Development of this proprietary information requires a significant investment of time and resources by JT Packard.  (*Id.*)  It also has significant | subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward and Washburn Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**. (*See* Defendants' Response to PFOF, ¶ 19.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| economic value and would be especially valuable to our competitors in the power services industry.  (Washburn Decl. ¶ 3.) | |
| 21.  In an effort to maintain the confidentiality of its proprietary information, JT PACKARD requires that the individuals it employs above sign restrictive covenants, non-solicitation and non-disclosure agreements as a condition of employment, and have password login to confidential databases/software.  (Ward Decl. at ¶ 6.)  It also limits access to that information to only those employees with a business need to know.  (*Id.*) | 21.  **Disputed**.  Plaintiff (as opposed to JTP) took no action to "maintain the confidentiality of its proprietary information."  Had plaintiff wanted to seek the benefit of the referenced employment agreements, it would have assured that its acquisition of JTP's assets included the agreements at issue in this litigation or had its employees enter new agreements. There is no competent evidence set forth in support of this proposed finding to establish that plaintiff acquired or otherwise assumed the agreements JTP's employees had with JTP and, in fact, the evidence establishes that plaintiff did not so acquire or assume those agreements.  (Bjelajac Decl. ¶¶ 13-14; Bray Decl. ¶ 14.)  In addition, there is no evidence in the record to show that S.R. Bray Corporation, Steven R. Bray (the sole member of Power Plus!) or Power Plus! agreed not to |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | compete with plaintiff as part of plaintiff's purchase of certain of JTP's assets.  In fact, the evidence suggests the exact opposite. (Bray Decl. ¶ 9; Bjelajac Decl. ¶¶ 13-14.) |
| 22.  Prior to their employment with JT Packard, James Nolden, Sandy Schiele, Chris Blodgett, Scott Bowman, Patricia Epstein, Michele Martin, Shane Wolfram, Jennifer Wingert, Sara Sullivan, Kristi Rue, Samantha Moyes, John Roidt, and Ben Wait ("Individual Defendants") had no knowledge of JT Packard's confidential information or trade secrets, i.e., the identity of JT Packard' clients, its contacts for those clients, pricing for various clients, its clients' power equipment needs and inventory, JT Packard's field service training and processes.  (Ward Decl. at ¶ 7; Washburn Decl. ¶ 3; Ward Supp. Decl. ¶ 2.)  Many of these individuals did not even work in the industry prior to their employment with JT Packard.  (*Id.*) | 22.  **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward and Washburn Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**. Plaintiff has defined "JT Packard" as itself. The plaintiff, TBPS, acquired only certain assets of JTP on or about January 19, 2010 after obtaining an assignment of them from Thomas & Betts Corporation; the plaintiff is ***not*** JTP. (Bjelajac Decl. ¶¶ 6-14; Defendants' Response to PFOF, ¶ 3.)  Furthermore, to the extent defendants can even discern what confidential information is at issue, there is no competent evidence in the record that the identified individuals did not know the allegedly confidential information from their prior employment with JTP or other experiences.  In addition, Power Plus! (and, thus, by extension its employees) and its sole member Steven R. Bray had access to and |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | knowledge of JTP's business information, which was readily ascertainable by proper means long before plaintiff acquired certain of JTP's assets.  (Bray Decl ¶¶ 3-9; Bjelajac Decl. ¶¶ 3-12.) |
| 23.  As a condition to, and in consideration of the Individual Defendants being hired by JT Packard, all except WOLFRAM, entered into:  (1) a non-solicitation agreement; (2) a non-disclosure agreement; and (3) a non-competition agreement.  (Ward Decl. at ¶ 6.) Those agreements provided that each "shall inure to the benefit of any successors or assigns of Employer and shall be enforceable against and/or binding upon any successors, employees, partners, corporations, proprietorships, partnerships, joint ventures, legatees, heirs, and assigns of Employee." (See Complt. Exs. A-M; Ward Decl. at ¶ 6, 22; Ward Supp. Decl. ¶ 8.) | 23.  **Objection**.  The citations to the Ward Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Plaintiff's citation to the April 19, 2010 Complaint further violates the Standing Order because pleadings are not facts. (Section II-A-2(b).)   Subject to the objection, this proposed finding is nevertheless **disputed**.  Plaintiff has defined "JT Packard" to mean itself.  There is no evidence before the Court that plaintiff TBPS (as distinguished from JTP) ever entered into |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | any employment agreements with any of the Individual Defendants or that plaintiff was assigned the identified agreements entered into with JTP prior to plaintiff's acquisition of certain of JTP's assets on or about January 26, 2010.  (*See* Defendants' Response to PFOF ¶¶ 3, 22.) Plaintiff's pleadings and declarations are incompetent on this point.  Indeed, plaintiff expressly disavowed the employment agreements with the Individual Defendants in the Asset Purchase Agreement it entered with JTP's Receiver.  (Bjelajac Decl. ¶ 14, Exh. B, §§ 6.06(a), 2.02, 9.12, 2.04.)  Finally, the enforceability of the employment agreements remain in dispute based on a failure of consideration and the prior material breach of JTP and TBPS.  (*See* Defendants' Response to PFOF, ¶ 25.) |
| 24.  All of the agreements described herein contain a choice-of-law provision designating Wisconsin law and venue in the State or Federal courts of Wisconsin and each one of | 24.  **Objection**.  Defendants object to this proposed finding as vague (as to what plaintiff means by "agreements described herein") and calling, in part, for a legal conclusion. Subject |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| them contains a severability clause providing that the invalidity of one portion of the agreement shall not affect enforceability of other portions thereof.  (*See* Complt.  Exs. A-M, Ward Decl. ¶¶ 6, 22; Ward Supp. Decl. ¶ 8.) | to this objection, this proposed finding is nevertheless **disputed in part**.  Defendants do not dispute that the employment agreements attached to the Second Amended Complaint contain choice of law, choice of venue and severability clauses but deny the legal effect plaintiff ascribes to them in this proposed finding.  Most critically, the provisions relied on by plaintiff are irrelevant because TBPS does not have the right to enforce these employment agreements. (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)  A severability clause in a restrictive covenant also is a violation of Wis. Stat. § 103.465. |
| 25.  In addition, all of the agreements described herein were supported by adequate consideration in that they were signed in connection with the Individual Defendants' hiring by, and receiving training from, JT Packard, plus in certain cases (Rue, Schiele, Sullivan, Uhalt, Blodgett, Wingert, Martin, Moyes) additional severance pay if the | 25.  **Objection**.  This proposed finding calls for a legal conclusion.  Subject to this objection, this proposed finding is nevertheless **disputed**.  First, plaintiff has no legal right to enforce the employment agreements at issue.  (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)  Second, the agreements fail for lack of consideration or |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| employee's termination was other than "for cause." (*See* Complt. Exs. A-M, Ward Decl. ¶¶ 6, 22; Ward Supp. Decl. ¶ 8.) | otherwise are unenforceable against the defendants due to the prior material breach of JTP and plaintiff (to the extent plaintiff obtained them as part of the assignment of JTP's assets).  (Nolden Decl. ¶¶ 10-11; Hicks-Schiele Decl. ¶ 2; Blodgett Decl. ¶¶ 4-7; Uhalt Decl. ¶¶ 4-6; Bowman Decl. ¶¶ 5-6; Epstein Decl. ¶¶ 4-6; Martin Decl. ¶¶ 3-6, 8; Wolfram Decl. ¶¶ 4-5; Wingert Decl. ¶¶ 3-7; Sullivan Decl. ¶¶ 2-5; Rue Decl. ¶¶ 2-5; Moyes Decl. ¶¶ 5-9; Roidt Decl. ¶¶ 2, 5-6; Wait Decl. ¶¶ 2, 5-6.)  Finally, plaintiff has no claim against Wolfram for violation of any employment agreement; Wolfram did not sign any such agreement with JTP (Wolfram Decl. ¶ 5) and plaintiff has failed to set forth evidence showing that Wolfram signed any covenants when employed by TBPS. |
| 26.  NOLDEN, BLODGETT, UHALT, BOWMAN, EPSTEIN, MARTIN, WINGERT, MOYES, ROIDT, and WAIT's Non-Solicitation Agreements specifically | 26.  **Disputed in part**.  This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| provide, inter alia, as follows:<br><br>For a period of one (1) year following termination (voluntary or involuntary) of Employee's employment with Employer, Employee covenants, promises and agrees that he/she will not solicit on behalf of or for the benefit of any person or entity in competition with Employer, including the Employee, any customer of Employer with which Employee had contact during one (1) year preceding the date of Employee's termination. For purposes of this Agreement, customer means: (a) any person or entity that purchased any goods or services from Employer within one year prior to the termination of Employee's employment, and (b) any potential customer that Employee ad solicited on behalf of Employer within one (1) year prior to termination of Employee's employment.<br>(*See* Complt. Exs. A, B, C, D, E, F, J and L and M.) | enforcement. (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23.) In addition, defendants challenge the enforcement of these provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff. (*See* Defendants' Response to PFOF, ¶ 25.) These agreements are also in violation of Wis. Stat. § 103.465. |
| 27. SCHIELE, RUE, and SULLIVAN's Non-Solicitation Agreements specifically provide, inter alia, as follows:<br><br>For eighteen (18) months following the end of Employee's employment with the Company, for whatever reason, Employee agrees not to directly or indirectly attempt to sell to any Restricted Customer any products, goods, or services of the type or substantially similar to the | 27. **Disputed in part**. This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's enforcement. (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.) In addition, defendants challenge the enforcement of these |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| type sold or provided by the Employee on behalf of the Company during the twelve (12) months preceding the end, for whatever reason, of Employee's employment with the Company. During the term of Employees employment with the Company and for twelve (12) months thereafter, Employee shall not directly or indirectly encourage any Company employee to terminate such employee's employment with the Company or solicit such an individual for employment outside the Company which would end or diminish that employee's services to the Company.<br><br>(*See* Complt. Exs. G, H and I.) | provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff.  (*See* Defendants' Response to PFOF, ¶ 25.)  These agreements are also in violation of Wis. Stat. § 103.465. |
| 28.  Defendants UHALT, BLODGETT, WINGERT, MARTIN, AND MOYES, in addition to executing the agreement described in paragraph 47, also executed agreements containing the language set forth above pertaining to SCHIELE, RUE, and SULLIVAN.  (*See* Complt. Exs. A, D, J, K, and L.) | 28.  **Disputed in part**.  This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's enforcement.  (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)  In addition, defendants challenge the enforcement of these provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff.  (*See* |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | Defendants' Response to PFOF, ¶ 25.)  These agreements are also in violation of Wis. Stat. § 103.465. |
| 29.  The SCHIELE, RUE, and SULLIVAN Agreements (which Uhalt, Blodgett, Wingert, Martin, and Moyes also executed) further provide:<br><br>    Duty of Loyalty:  During the term of the Employee's employment with the Company, the Employee will not:  (i) directly or indirectly compete with the Company; (ii) directly or indirectly divert or attempt to divert Customers' or Potential Customers' business from the Company anywhere the Company does or is taking steps to do business; (iii) prepare to directly or indirectly compete against the Company or prepare to divert or attempt to divert Customers' or Potential Customers' business away from the Company.<br>(See Complt. Exs. G, H and I.) | 29.  **Disputed in part**.  This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's enforcement.  (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)  In addition, defendants challenge the enforcement of these provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff.  (*See* Defendants' Response to PFOF, ¶ 25.)  These agreements are also in violation of Wis. Stat. § 103.465. |
| 30.  NOLDEN, BLODGETT, UHALT, BOWMAN, EPSTEIN, MARTIN, WINGERT, MOYES, ROIDT, and WAIT's non-disclosure agreements specifically provide, inter alia, as follows: | 30.  **Disputed in part**.  This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's enforcement.  (*See* Defendants' Response to |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| Employee agrees that, for a period of one (1) year following termination(voluntary or involuntary) of his/her employment with Employer, Employee shall not use, reveal or disclose Employer's Proprietary or Confidential Information, and shall not induce or assist others in obtaining, using, or revealing Employer's Proprietary or Confidential Information, in any manner which is or may reasonably be construed to be to the detriment of Employer.  Without limitation to the provisions... above, Employee expressly agrees that, for a period of one (1) year following termination (voluntary or involuntary) of his/her employment with Employer, Employee shall not use Employer's Proprietary Information in the form of customer identities, contacts, preferences, needs, desires, purchasing histories, or other customer information, for the purpose of soliciting such customers in competition with Employer.  For purposes of this sub-paragraph, customer means: (a) any person or entity that purchases any goods or services from Employer within one year prior to the termination of Employee's employment, and (b) any potential customer of Employer, either identified as such by Employer during Employee's employment or actually solicited by Employer, within one (1) year prior to termination of Employee's employment, where Employee acquired knowledge of the potential customer during the course of his/her employment with Employer. | PFOF, ¶¶ 3, 21-23, 25.)  In addition, defendants challenge the enforcement of these provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff.  (*See* Defendants' Response to PFOF, ¶ 25.)  These agreements are also in violation of Wis. Stat. § 103.465. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| (*See* Complt.  Exs. A, B, C, D, E, F, J, K and M.) | |
| 31.   Defendant NOLDEN, BLODGETT, UHALT, BOWMAN, EPSTEIN, MARTIN, WINGERT, MOYES, ROIDT, and WAIT's non-disclosure agreements define "confidential" and "proprietary" information in part to include[d] "any data or information relating to either Employer's business, products, services or customers that is material to Employer and not generally known by the public or disclosed in the public sales literature of Employer."  Such information is also defined to include: information relating to business processes and methods, computer hardware and software programs, inventions and discoveries, sales figures and projections, marketing and advertising strategies, methodologies and research, financial information, internal policies and procedures; training practices and methods, and customer | 31.  **Disputed in part**.  This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's enforcement.  (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)  In addition, defendants challenge the enforcement of these provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff.  (*See* Defendants' Response to PFOF, ¶ 25.)  These agreements are also in violation of Wis. Stat. § 103.465. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| information (including information pertaining to the identity of Employer customers, their special demands, preferences and tendencies and their current and anticipated requirements for Employer's products and services).  (*See* Complt. Exs. A, B, C, D, E, F, J, K and L and M.) | |
| 32.  Defendant SCHIELE, SULLIVAN, and RUE's non-disclosure agreements provide that, for a period of eighteen (18) months following the end of their employment, they shall not "directly or indirectly use or disclose Confidential Information.."  The agreements define "Confidential Information" as "all non-Trade Secret information of, about or related to the Company by its customers that is not known generally to the public or the Company's competitors" including:  "(i) information about products under development, research, development or business plans, financial information, Customer lists, distribution lists, | 32.  **Disputed in part**.  This proposed finding is disputed to the extent that plaintiff is suggesting that these agreements have been assigned or are otherwise subject to plaintiff's enforcement.  (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)  In addition, defendants challenge the enforcement of these provisions based on the failure of consideration and the prior material breach of JTP and, to the extent the agreements were assigned to TBPS, the plaintiff.  (*See* Defendants' Response to PFOF, ¶ 25.)  These agreements are also in violation of Wis. Stat. § 103.465. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| vendor lists, information about orders from and transactions with Customers, distributors or vendors, sales and marketing strategies and plans, pricing strategies, information relating sources of material and production costs, personnel information, and business records; (ii) information which us marked for otherwise designated as confidential or proprietary by the Company; and (iii) confidential information of customers. (*See* Complt. Exs. G, H and I.) | |
| 33.  During a meeting held on the last day of his employment with JT Packard, NOLDEN advised JT Packard's Human Resources manager that he was going to "destroy" JT Packard.  NOLDEN reiterated this comment several times during the interview.  (Ward Decl. at ¶24.) | 33.  **Disputed**. (Nolden Decl. ¶¶ 4-6.) |
| 34.  NOLDEN misappropriated confidential information from JT Packard prior to the end of his employment, solicited other JT Packard employees to leave JT Packard to go to work | 34.  **Disputed**. (Nolden Decl. ¶¶ 6-9.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| for POWERPLUS! and solicited clients from JT Packard while still employed by it.  (Ward Decl. at ¶25; Washburn Decl. ¶ 4.) | |
| 35.  Immediately following the end of his employment with JT Packard, NOLDEN engaged in the following actions on behalf of POWERPLUS!: <br><br> a.      solicitation of JT Packard customers with whom he had contact during the last year of his employment with JT Packard and whose relationships with JT Packard preceded his employment with JT Packard. <br> b.      solicitation of then-current JT Packard employees to come to work for POWERPLUS! <br> c.      solicitation and gathering of confidential business information of JT Packard through employees of JT Packard. <br> d.      tortuous interference with JT Packard customer relationships. | 35.  **Disputed**. (Nolden Decl. ¶¶ 6-9.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| e.     using JT Packard's confidential business information to solicit current JT Packard employees to solicit customer business on behalf of POWERPLUS! <br><br>(Ward Decl. at ¶26; Washburn Decl. ¶ 4-5.) | |
| 36.  Since their respective departures from JT Packard and for the benefit of POWERPLUS!, SCHIELE, UHALT and NOLDEN have used their intimate, detailed knowledge of JT Packard's confidential client information to solicit current clients of JT Packard including Via West, Charter, McKinstry, FedEx, Verizon, Agilent, United Healthgroup, and Oracle.  (Washburn Decl. at ¶ 5.) | 36.  **Objection**. In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  Subject to the objection, the proposed finding is nevertheless **disputed**.  The information is not confidential |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | or subject to trade secret protection (to the extent the information is even identified clearly) as to Power Plus! and its employees. (*See* Defendants' Response to PFOF, ¶ 19.) To the extent plaintiff claims the use and solicitation identified violates one or more of the employment agreements at issue in this case, plaintiff has no right to enforce those agreements as it did not acquire them in its purchase of certain of JTP's assets and they are otherwise unenforceable for lack of consideration and the prior material breach by JTP and, to the extent they have been assigned to TBPS, the plaintiff.  (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.) |
| 37.  On March 8, 2010, immediately prior to announcing her resignation, SCHIELE forwarded nearly 100 e-mails from her JT Packard e-mail account to her personal e-mail account.  (Washburn Decl. at ¶ 6.)  Those emails contained at least the following categories of information: | 37.  **Objection**. The citations to the Washburn Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| • Contact information, telephone numbers, names, and addresses of JT Packard customers;<br><br>• JT Packard marketing materials;<br><br>• JT Packard customer contract and bid information;<br><br>• Procedures for maintenance of JT Packard products; and<br><br>• Account assignment lists, including customer names, responsible JT Packard employee, customer account value and contract value.<br><br>(Washburn Decl. at ¶6.) | foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**. (Hicks-Schiele Decl. ¶¶ 10-12.) |
| 38.  SCHIELE went to work for POWERPLUS! within two weeks after forwarding the emails outlined above. Washburn Decl. at ¶ 7.  On information and belief, NOLDEN, on behalf of POWERPLUS!, instructed SCHIELE to bring that information with her to POWERPLUS!.  (*Id.*)  SCHIELE had no legitimate business reason as far as her work | 38.  **Objection**. The citations to the Washburn Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| at JT Packard was concerned to forward such information to her personal email account. (*Id.*)  In addition, prior to the end of her employment, SCHIELE participated in an interview for the purpose of recruiting a candidate for employment for POWERPLUS! (*Id.*) | the proposed finding is nevertheless **disputed**. (Hicks-Schiele Decl. ¶¶ 8-14; Nolden Decl. ¶¶ 6-9.) |
| 39.  Contrary to her non-compete and non-disclosure agreements, SCHIELE has failed to return her company-issued laptop computer.  (Ward Decl. at ¶27.) | 39.  **Disputed**. (Hicks-Schiele Decl. ¶ 13.) |
| 40.  Prior to their resignations from JT Packard, POWERPLUS! established e-mail accounts for ROIDT and BLODGETT, as well as cell phones, which both utilized before their employment with JT Packard ended, for the benefit of POWERPLUS! (Washburn Decl. at ¶8.) | 40.  **Disputed in part**.  Roidt obtained a Power Plus! cell phone approximately 48 hours before announcing that he was leaving TBPS (he was told to leave a day after announcing), but Roidt did not obtain a Power Plus! email account until several weeks after starting his employment at Power Plus!. (Roidt Decl. ¶ 10.)  Roidt does not recall using the cell phone prior to leaving TBPS for any Power Plus! business, much less "for the benefit of PowerPlus!."  (Roidt Decl. ¶ 10.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | Blodgett had a Power Plus! email account and cell phone prior to leaving TBPS, but did not use them "for the benefit of Power Plus!." (Blodgett Decl. ¶ 8.)  In the ordinary course of business, Power Plus! establishes e-mail accounts and provides cell phones when an employee is hired.  (Bjelajac Decl. ¶ 23.) |
| 41.  During his employment with JT Packard, BLODGETT communicated with NOLDEN and other key personnel of POWERPLUS! for the purpose of sharing confidential JT Packard information and interfering with JT Packard's business expectancy and contractual relationships.  (*See* Washburn Decl. at ¶9-10.) | 41.  **Objection**. In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Washburn Declaration do not support the proposed finding and violate the |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**.  (Blodgett Decl. ¶¶ 8; Nolden Decl. ¶¶ 6-9.) |
| 42.  During his employment with JT Packard, BLODGETT attempted to destroy evidence of his breach of non-solicitation and non-disclosure agreements by deleting communications from his computer and attempting to have his computer "reset" to destroy evidence of his wrongful conduct. (Ward Decl. at ¶ 28.) | 42.  **Disputed**. (Blodgett Decl. ¶ 9.) |
| 43.   In early April, 2010, JT Packard received a call from a client, Flight Safety International, who indicated, without forewarning, that it was moving its contract to another provider.  (Washburn Decl. at | 43.  **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot* |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| ¶ 11.)  Several days later, JT Packard received an e-mail confirming that the client planned to move its business to POWERPLUS!.  (*Id.*)  This client was one serviced by BLODGETT, though it was not BLODGETT's client originally.  (*Id.*)  BLODGETT, it is believed, solicited the client to cease doing business with JT Packard and to commence doing business with POWERPLUS!.  (*Id.*)  When an employee of JT Packard went to locate to documentation relating to the client, including pricing information, such documentation was missing.  (*Id.*)  On information and belief, in 2009 alone, the value of the business of this client for the period through and including October 30, 2009 was over $350,000.  (*Id.*) | *Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Washburn Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**.  (Blodgett Decl. ¶ 8.) |
| 44.  On April 16, 2010, BLODGETT was scheduled to have an exit interview with JT Packard.  BLODGETT did not appear, nor has he returned his company-owner laptop | 44.  **Disputed**. (Blodgett Decl. ¶¶ 8-10.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| computer.  (Ward Decl. at ¶ 29.) | |
| 45.  Prior to their resignations and during their employment with JT Packard, UHALT and NOLDEN engaged in a series of communications regarding the solicitation of JT Packard customers on behalf of POWERPLUS!, based on confidential information each had learned as a result of their employment with JT Packard. (Washburn Decl. at ¶ 9.)  JT Packard became aware of such communications because NOLDEN e-mailed UHALT and BLODGETT regarding the solicitation of JT Packard clients on behalf of POWERPLUS! while UHALT and BLODGETT were still employed by JT Packard.   (*Id.*)  NOLDEN indicated that the three of them would plan a trip to Denver the week of April 19, 2010 to accomplish such goals.  (*Id.*)  In the e-mail, NOLDEN referred to previous efforts by he and SCHIELE to solicit JT Packard business. (*Id.*) | 45.  **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding. In addition, the citations to the Washburn Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | the proposed finding is nevertheless **disputed**. (Uhalt Decl. ¶¶ 9-10; Hicks-Schiele Decl. ¶¶ 9-12, 14; Blodgett Decl. ¶ 8; Nolden Decl. ¶¶ 6-9.) |
| 46.  Upon information and belief, NOLDEN, SCHIELE, BLODGETT, MARTIN, MOYES and UHALT have used and disclosed JT Packard' confidential proprietary information and trade secrets obtained through their employment with JT Packard.  (Ward Decl. at ¶ 30.) | 46.  **Objection.** In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding. In addition, the citations to the Ward Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**. (Uhalt Decl. ¶¶ 9-10; Hicks-Schiele Decl. ¶¶ 9-12, 14; Blodgett Decl. ¶ 8; Nolden Decl. ¶¶ 6-9; Martin Decl. ¶ 7.) |
| 47.  Specifically, MARTIN forwarded confidential JT Packard information relating to an employee training program, developed by JT Packard, to her home e-mail account from her JT Packard e-mail account shortly before her resignation from JT Packard. (Ward Decl. at ¶ 3 1.)  MARTIN had no legitimate business reason with respect to her JT Packard employment to forward such information to her personal e-mail account. (*Id.*)  It is believed MARTIN has shared such information with POWERPLUS! (*Id.*) | 47.  **Disputed**.  (Martin Decl. ¶ 7, Exh. A.) |
| 48.  MOYES, ROIDT, and WINGERT provided specific client price bidding information they received as a result of their | 48.  **Objection**. In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| employment with JT Packard to POWERPLUS!. (Ward Decl. at ¶ 32; Ward Supp. Decl. ¶ 9.) | particularity what precisely is confidential and subject to trade secret status. *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding. Plaintiff goes so far as to suggest that Moyes, Roidt and Wingert used "specific client price bidding," yet do not even attempt to identify the "specific" data they allegedly stole, making it impossible for defendants to meaningfully respond to this proposed finding. In addition, the citations to the Ward Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | foundation exists for the introduction of a fact. (Section II-A-2(b).) |
| 49.  On April 19, 2010, at or around 9:57 A.M., WAIT announced his resignation from JT Packard.  (Ward Supp. Decl. ¶ 3, Ex. 1.)  Several hours earlier, WAIT logged in to the JT Packard Network, and gathered and forwarded a significant amount of proprietary, confidential, and trade secret information to himself using his own JT Packard email address.  Included in this information is the following categories of information:<br><br>• Confidential, Proprietary, and trade secret "methods of process" – internal JT Packard-developed procedures for service and repair of client equipment;<br><br>• Confidential, Proprietary, and trade secret detailed personnel information regarding JT Packard field service engineers, including, but not limited to, a JT Packard-developed matrix | 49. **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status. *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002).  The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| used in connection with providing field service technician support to clients;<br>• Customer contact lists;<br>• A variety of other field engineer service processes and procedures that are unique and proprietary to JT Packard.<br>(Ward Supp Decl. ¶ 6.) | of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed in part**.  Wait did secure certain information as stated in the proposed finding, but the information is not "unique" or confidential to TBPS.  (Wait Decl. ¶ 11.)  In addition, Wait did not send himself a "customer contact list." (Wait Decl. ¶ 11.)  Finally, the information Wait is alleged to have taken from TBPS is encompassed by that contained in the Data Room run in relation to the due diligence transaction involving the sale of JTP such that, to the extent it was confidential or a trade secret, it was already readily ascertained by Power Plus! by proper means.  (*See* Defendants' Response to PFOF, ¶ 19.) |
| 50.  The information described above is unique and proprietary to JT Packard, developed by it using considerable time and resources, it is not generally known to the | 50.  **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| public or our competitors, and would be of great value to our competitors.  (Ward Supp Decl. ¶ 7.) | subject to trade secret status. *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**.  (*See* Defendants' Response to PFOF, ¶ 19; Bray Decl. ¶¶ 3-9; Bjelajac Decl. ¶¶ 3-12; Wait Decl. ¶ 11.) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| 51. On April 19, 2010, around 3:44 P.M. In connection with the above-captioned lawsuit, Human Resources Director Tom Ward sent JT Packard employees a "litigation hold" communication advising them of their obligations to preserve relevant or potentially relevant documentation and communications (whether in electronic form or otherwise), in light of this lawsuit. Ward requested that each employee respond not only to indicate their receipt of his email, but to indicate their compliance with the directives in it. (Ward Supp Decl. ¶ 4.) | 51. **Disputed in part**. Defendants do not dispute that Tom Ward sent the email, but dispute they received it, or were otherwise bound to comply with instructions from Mr. Ward, as the majority had already left TBPS's employ by April 19, 2010. (Wait Decl. ¶ 12; Epstein Decl. ¶ 9; Wingert Decl. ¶ 6; Wolfram Decl. ¶ 6; Sullivan Decl. ¶ 5; Moyes Decl. ¶ 8; Rue Decl. ¶ 5; Roidt Decl. ¶¶ 7, 9; Martin Decl. ¶ 6; Hicks-Schiele Decl. ¶ 5; Blodgett Decl. ¶ 6; Nolden Decl. ¶ 4; Uhalt Decl. ¶ 6; Bowman Decl. ¶ 4.) |
| 52. On April 21, 2010, around 9:45 A.M., Wait advised Ward of his intent to work for POWERPLUS! and indicated he would not "return" Ward's "litigation hold" e-mail sent on April 19, 2010. (Ward Supp. Decl. ¶ 5. ) | 52. **Undisputed**. |
| 53. All individually-named defendants are unfairly competing with JT Packard and soliciting its clients in the geographic area encompassed by the non-competition and | 53. **Objection**. This proposed finding states a legal conclusion, not a fact, and therefore does not "comply substantially" with the Court's Standing Order and should be stricken. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| non-solicitation provisions of their respective Employment Agreements, to the detriment and harm of JT Packard. (Ward Decl. at ¶ 34.) | (Section II-D.) In addition, in an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status. *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding. In addition, the citations to the Ward Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).) |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| 54.  POWERPLUS! had knowledge of Individual Defendants' Agreements with JT Packard and encouraged them to breach their agreements by using and disclosing confidential information obtained at JT Packard in order to solicit JT Packard's customers.  *See generally* (Ward Decl and Supp. Decl. and Washburn Decl). | 54.  **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002).  The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward and Washburn Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact.  (Section II-A-2(b).)  Subject to the objection, |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | the proposed finding is nevertheless **disputed**. There are no agreements between the Individual Defendants and plaintiff and plaintiff offers no evidence to establish that plaintiff had separately negotiated employment agreements with the Individual Defendants. The only agreements at issue are those executed by JTP and the Individual Defendants and plaintiff did not acquire those agreements when it acquired certain other assets of the Receiver and they are otherwise not enforceable. (*See* Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.) In addition, to the extent plaintiff has its own employment agreements with the Individual Defendants (ie. other than those plaintiff is trying to enforce as executed by JTP), Power Plus! had no knowledge of any such agreements when it hired the Individual Defendants. (Bray Decl. ¶ 14; Bjelajac Decl. ¶ 22.) Moreover, Power Plus! advised the Individual Defendants that they were not to violate any duties to former |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | employers.  (Bray Decl. ¶ 13; Bjelajac Decl. ¶ 21; Lawrence Decl. ¶ 4.) |
| 55.   In particular, POWERPLUS! encouraged and directed former JT Packard employees to recruit other JT Packard employees to come to work for POWERPLUS while both were still employed by JT Packard for the specific purpose of injuring it. | 55. **Objection**.  This proposed finding violates the Standing Order because it fails to set forth an actual citation to the evidentiary authority on which the finding is based. (Section II-A-2(b).) As such, there is nothing to support the proposed finding and it violates the Court's Standing Order that requires affidavits and sworn declarations to support factual findings and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).) Subject to the objection, the proposed finding is nevertheless **disputed**.  (Bray Decl. ¶¶ 10-13; Bjelajac Decl. ¶¶ 15-22; Lawrence Decl. ¶¶ 3-4.) |
| 56.  In addition, POWERPLUS! encouraged, directed, aided, abetted and approved the individually-named defendants' actions of:   a.   competing with JT Packard while | 56. **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| still employed by it, and afterwards, in breach of their non-competition agreements;<br><br>  b.  soliciting clients with whom they had contact during the last year of their employment with JT Packard, in breach of their non-solicitation agreements;<br><br>  c.  misappropriating confidential and trade secret information; and<br><br>  d.  tortuously interfering with JT Packard's customer relationships and employment relationships.<br><br>(*See generally*, Ward Dec and Supp. Decl. and Washburn Decl.) | subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002). The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward and Washburn Declarations do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. (Section II-A-2(b).)  In addition, the proposed finding does not set forth with the required "precision" of the Standing Order which portions of the referenced declarations are relied on for the factual proposition, relying |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | instead on blanket citations. (Section II-A-2(b).)  Subject to the objection, the proposed finding is nevertheless **disputed**.  Power Plus! had no obligation not to encourage the Individual Defendants to compete with plaintiff; Power Plus! is and was unaware of any agreements between plaintiff and the Individual Defendants that precluded the Individual Defendants from competing with plaintiff (as distinguished from those agreements with JTP, which went out of business as of January 26, 2010, that were not acquired by plaintiff).  (Bjelajac Decl. ¶ 22; Bray Decl. ¶ 14; Defendants' Response to PFOF, ¶¶ 3, 21-23, 25.)   There is also no evidentiary support for the proposition that Power Plus! misappropriated any of plaintiff's allegedly confidential or trade secret information.  Notably, Power Plus! has readily ascertained knowledge by proper means of the business information plaintiff purchased from JTP's Receiver.  (Bray Decl. ¶¶ 3-9; Bjelajac |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | Decl. ¶¶ 3-12; Defendants' Response to PFOF, ¶ 19.) |
| 57.  Within the past week, several other significant current customers have advised JT Packard that NOLDEN and other former JT Packard employees have solicited their business on behalf of POWERPLUS! (Washburn Decl. ¶ 13; Ward Supp. Decl. ¶ 9.) | 57.  **Objection**.  In an injunction setting, a plaintiff seeking trade secret protection has an affirmative obligation to state with particularity what precisely is confidential and subject to trade secret status.  *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002).  The evidentiary support for this proposed finding fails to state what plaintiff seeks to protect with sufficient particularity and defendants are thus unable to fully respond to this proposed finding.  In addition, the citations to the Ward and Washburn Declaration do not support the proposed finding as stated and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | foundation exists for the introduction of a fact. (Section II-A-2(b).)  In addition, the cited material constitutes hearsay testimony from Mr. Ward and Mr. Washburn and is thus inadmissible.  Subject to the objection, the proposed finding is nevertheless **disputed in part**.  The Individual Defendants were free to assist Power Plus! to compete with plaintiff.  Plaintiff has submitted no factual information to establish a right to enforce JTP's covenants or a contractual right to restrict defendants' activities independent of these covenants.  JTP went out of business as of January 26, 2010. (Response to PFOF, ¶¶ 19-25.) |
| 58.  JT Packard has suffered and will continue to suffer harm as a result of defendants' actions; the marketplace in which JT Packard and POWERPLUS! compete is highly specialized, and there are very few entities competing for the same, fixed client base to provide the same or similar goods and services.  (Washburn Decl. ¶ 14.) | 58.  **Objection**.  The citations to the Washburn Declaration do not support the proposed finding and violate the Court's Standing Order that requires affidavits and sworn declarations to be based on personal knowledge and otherwise comply with the rules of admissibility, including that a proper foundation exists for the introduction of a fact. |

| PLAINTIFF'S PROPOSED FINDINGS OF FACT | DEFENDANTS' OBJECTIONS AND RESPONSES |
|---|---|
| | (Section II-A-2(b).) |

Dated:  May 6, 2010.

KRAVIT  HOVEL & KRAWCZYK S.C.
*s/ Mark M. Leitner*
Mark M. Leitner
Joseph S. Goode
825 North Jefferson Street
Milwaukee, Wisconsin  53202-3737
Telephone:  (414) 271-7100
Facsimile:  (414) 271-8135
leitner@kravitlaw.com
goode@kravitlaw.com

*Attorneys for Defendants James Nolden, Sandy Schiele, Chris Blodgett, Jim Uhalt, Scott Bowman, Patricia Epstein, Michele Martin, Shane Wolfram, Jennifer Wingert, Sarah Sullivan, Kristi Rue, Samantha Moyes, Benjamin Wofford Wait, IV, and John Roidt*

STEPTOE & JOHNSON LLP
*s/ Richard G. Reinis*
Richard G. Reinis
Rebecca Edelson
2121 Avenue of the Stars, Suite 2800
Los Angeles, California  90067-5052
Telephone:  (310) 734-3200
Facsimile:   (310) 734-3300
rreinis@steptoe.com
redelson@steptoe.com

*Attorneys for Defendant S.R. Bray L.L.C.*