UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS AND BETTS POWER SOLUTIONS, LLC, d/b/a JT PACKARD & ASSOCIATES,<br><br>Plaintiff,<br><br>vs.<br><br>S.R. BRAY LLC, d/b/a PowerPlus, Sandy Schiele, and Ben Wait,<br><br>Defendants. | Court File No. 10-cv-00213<br><br><br><br>**THIRD AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff Thomas & Betts Power Solutions, LLC, d/b/a JT Packard ("JT Packard"), for its Complaint against defendants S.R. Bray LLC, d/b/a PowerPlus ("PowerPlus"), Sandy Schiele ("Schiele") and Ben Wait ("Wait"), states and alleges as follows:

### PARTIES

1.    JT Packard is a Delaware limited liability company with its principal place of business at 5900 Eastport Blvd, Building V, Richmond, Virginia 23231. It is a wholly-owned subsidiary of Thomas & Betts Corporation. Thomas & Betts Corporation is the sole member of JT Packard. Thomas & Betts Corporation is incorporated in the State of Delaware; its principal place of business is located at 8155 T&B Boulevard, Memphis, Tennessee 38125. Thomas & Betts Corporation is a citizen of the State of Tennessee for purposes of 28 U.S.C. § 1332(a). In addition to other lines of business, JT Packard does business at 275 Investment Circle, Verona, Wisconsin 53593.

2.    PowerPlus is a Nevada limited liability company whose principal place of business is located at 1210 N. Red Gum Street, in the City of Anaheim, California 92806. The members of PowerPlus are Steven R. Bray and Keith Bjelajac, both of whom are citizens of the

state of California for purposes of 28 U.S.C. § 1332(a). PowerPlus conducts business within the State of Wisconsin and elsewhere. PowerPlus provides temporary power solutions, including generators, power poles and utility consulting design\installation to a wide variety of market segments including the utility, construction and event industries. PowerPlus is a direct competitor of JT Packard in the power services industry.

3. Schiele is a citizen of Ohio, residing at 2830 Barharbor Ct., Lewis Center. Schiele was employed out of JT Packard's Verona, Wisconsin location from approximately September 2, 2008 through March 24, 2010. Schiele is a citizen of the State of Ohio for purposes of 28 U.S.C. § 1332(a).

4. Wait is a citizen of Port Orange, Florida residing at 3779 Fiano Drive. Wait is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332(a).

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action based on diversity of citizenship, as set forth in 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and the parties are all citizens of different states.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because PowerPlus has offices within this district and a substantial part of the events giving rise to the claims asserted below occurred in this district.

## FACTS COMMON TO ALL COUNTS

**JT Packard and The Defendants.**

7. JT Packard is engaged in the business of providing critical power services, including uninterruptible power supply services and equipment, to customers throughout the country, including those in the State of Wisconsin. JT Packard also provides batteries and generator services as part of its uninterruptible power services.

8. Like JT Packard, PowerPlus provides critical power services and equipment to customers throughout the country, including in Wisconsin.

9. Schiele worked as a Business Development Executive for JT Packard at its Verona office until her resignation on March 24, 2010. During her employment, Schiele's job duties as Business Development Executive included general sales support, soliciting and developing new client relationships; maintaining business relationships with existing clients; developing and maintaining lists of clients, potential clients and contacts; and creating goodwill through personal contacts and business relationships for JT Packard.

10. Wait worked as JT Packard's Southeast Regional Service Manager until his resignation on April 19, 2010. Wait's job duties included, *inter alia*, the supervision and direction of field service engineers, assignment of field engineers to service customer equipment, and maintenance of customer relationships with respect to field engineer service-related issues.

**JT Packard's Purchase Of The Assets Of JTP.**

11. S.R. Bray Corporation ("SRB") formerly owned a company known as JT Packard & Associates, Inc. ("JTP"). On June 23, 2009, SRB consummated a general assignment for the benefit of creditors with Credit Managers Association of California (the "General Assignment"). Through the General Assignment, SRB transferred all of its assets, including but not limited to its interests in JTP and all of the assets of JTP, to Credit Managers Association of California.

12. On or about June 23, 2009, Credit Managers Association of California transferred a portion of SRB's assets to PowerPlus. The transfer included all of the construction services and generator rental assets of SRB, but specifically excluded JTP, the business conducted by JTP and all of the assets of SRB used predominately or exclusively in JTP's business.

13. On July 22, 2009, a number of SRB's creditors filed an involuntary bankruptcy petition against SRB in the United States Bankruptcy Court for the Central District of California, Case No. 8:09-17395 ("Bankruptcy Proceeding").

14. In connection with the Bankruptcy Proceeding, JTP was placed into receivership through a proceeding commenced on November 24, 2009, in the Circuit Court of Dane County, Case No. 09-CV-5940 (the "Receivership Proceeding").

15. Through the Receivership Proceeding, the assets of JTP were sold to JT Packard via auction. JT Packard completed the purchase of the operating assets of JTP on January 26, 2010, pursuant to a written Asset Purchase Agreement ("APA"), effective as of January 19, 2010. Since January 26, 2010, JT Packard has owned all of the assets of JTP.

16. Pursuant to the APA, JT Packard acquired all of the "Purchased Assets" as that term is defined in the APA.

17. One category of the Purchased Assets is all of the Intellectual Property Rights of JTP. As defined by the APA, Intellectual Property Rights included, but were not limited to "all trade secrets and confidential information (including all ideas, concepts, research and development, know-how, composition information and embodiments, manufacturing and production processes, techniques and business data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, and business and marketing plans and proposals)." Intellectual Property Rights also includes "all copies and tangible embodiments of the foregoing [categories] in whatever form or medium."

**PowerPlus's Theft of JT Packard's Information.**

18. Unbeknownst to JT Packard, SRB copied and\or retained certain of JTP's confidential information, trade secrets and other business information (the "Retained

Information") that had been transferred by SRB to the California Credit Managers Association, by the California Credit Managers Association to the JTP receivership estate and by the JTP receivership estate to JT Packard.  Such Retained Information includes information that was included in the Purchased Assets.

19. Upon information and belief, the Retained Information has been acquired by PowerPlus from SRB, the California Credit Managers Association and/or the JTP receivership estate.  It remains in the possession and control of PowerPlus currently.  PowerPlus, however, has no right or authority to possess or use the Retained information.

20. Upon information and belief, PowerPlus is using the Retained Information in its business in competition with and to the detriment of JT Packard.

**PowerPlus's Breach Of The Independent Contractor Agreement.**

21. On July 13, 2009, PowerPlus entered into an Independent Contractor Agreement ("ICA") with JTP, by which PowerPlus was to provide generator services to JTP customers.

22. The ICA was transferred to JT Packard pursuant to the APA.

23. The ICA provides that, during the term of that agreement and for a period of one (1) year after its expiration or termination, PowerPlus shall not "directly or indirectly, on [PowerPlus's] own behalf or on behalf of any third party, call, entice, induce or in any other way encourage any Customer [of JT Packard] to:  (i) terminate or diminish its relationship or business activities with [JT Packard]; (ii) seek to persuade any Customer of [JT Packard] to conduct business or activity with a third party that such Customer is contemplating conducting with [JT Packard]; or (iii) otherwise interfere with [JT Packard's] relationship with any of its Customers."

24. The ICA defines "Customers" to mean "any end-user of Equipment existing during the term of [the ICA] whereas [JT Packard] is identified as the current incumbent to provide maintenance, remedial, or related services for uninterruptible power supply equipment."

25. The ICA also requires PowerPlus to maintain the confidentiality of "Confidential Information," as that term is defined by the ICA.

26. Further, the ICA requires that PowerPlus, during the term of the ICA and for a period of one year after expiration or termination of that agreement, not solicit, directly or indirectly, any of JT Packard's employees.

27. PowerPlus has breached the terms of the ICA by improperly soliciting business from JT Packard's Customers.

28. PowerPlus has breached the ICA by improperly soliciting JT Packard's employees to work for PowerPlus, including without limitation, Schiele, Chris Blodgett, Jim Uhalt, Scott Bowman, Patricia Epstein, Michele Martin, Shane Wolfram, Jennifer Wingert, Sarah Sullivan, Kristi Rue, Samantha Moyes, John Roidt and Wait.

**PowerPlus's Other Illegal Conduct.**

29. PowerPlus has misappropriated JT Packard's Confidential Information, as defined in the ICA, and its Intellectual Property Rights, as defined in the APA.

30. PowerPlus, and its employees, members and representatives, have engaged in conduct amounting to tortious interference with contract and contractual relations by, among other things: (a) interfering with the employment relationships JT Packard has with its employees; and (b) interfering in the relationships JT Packard has with its customers. PowerPlus employee James Nolden—a former JT Packard employee—stated several times on his last day of

employment that, as a PowerPlus employee, he intended to "destroy" JT Packard. PowerPlus's actions are without justification and are not privileged.

**Wait's Illegal Conduct.**

31. On April 19, 2010, at approximately 6:53 a.m., Wait forwarded numerous e-mails (with over 60 attachments) containing Plaintiff's confidential, proprietary, and trade secret information from his JT Packard e-mail account to his personal e-mail account for the purpose of being able to access the information outside of JT Packard. Included in this information is the following categories of information:

- Dozens of Confidential, Proprietary, and trade secret "methods of process" – internal JT Packard-developed procedures for service and repair of client equipment;

- Confidential, Proprietary, and trade secret detailed personnel information regarding JT Packard field service engineers, including, but not limited to, a JT Packard-developed matrix used in connection with providing field service technician support to clients;

- Customer contact lists;

- A variety of other field engineer service processes and procedures that are unique and proprietary to JT Packard, and which were developed by it, in some cases specific to an individual client.

32. Within hours of forwarding these e-mails, Wait announced his resignation from JT Packard, but refused to inform the company of where he was going to work.

33. Shortly after filing its initial complaint in the above captioned matter, on April 19, 2010, JT Packard Human Resources Director Thomas C. Ward sent a "litigation hold" letter to

JT Packard employees, including Wait. The notice instructed Wait not to "discard or destroy any and all documents, records, papers, data or tangible things of, about or possibly relating to" 1) PowerPlus; 2) any of the former JT Packard employees now named as defendants; 3) any communications from PowerPlus directed to him or in his possession; and 4) any communications from any Individual Defendant to him or in his possession. Ward also requested that Wait respond to indicate his receipt and agreement to comply with the litigation hold mandates.

34. On April 21, 2010, Wait confirmed that he was "joining forces" with PowerPlus and advised Ward that he would not respond to the litigation hold notice to indicate his compliance with same.

**Schiele's Illegal Conduct.**

35. On March 8, 2010, immediately prior to announcing her resignation, Schiele forwarded nearly one hundred e-mails from her JT Packard e-mail account to her personal e-mail account. Those emails contained at least the following categories of information:

- Contact information, telephone numbers, names, and addresses of JT Packard customers;

- JT Packard marketing materials;

- JT Packard customer contract and bid information;

- Procedures for maintenance of JT Packard products; and

- Account assignment lists, including customer names, responsible JT Packard employee, customer account value and contract value.

36. Schiele went to work for PowerPlus within two weeks of the date she forwarded the emails outlined above. On information and belief, James Nolden a PowerPlus employee,

instructed Schiele to bring this information with her to PowerPlus. Schiele had no legitimate JT Packard business reason to forward such information to her personal email account. In addition, prior to the end of her employment, Schiele participated in an interview with another JT Packard employee for the purpose of recruiting that employee to work for PowerPlus

37. Contrary to her non-compete and non-disclosure agreements, Schiele failed to return her company-issued laptop computer upon her departure from JT Packard, and instead waited until April 20, 2010 to do so.

**The Court's May 17, 2010 Order.**

38. The Court in this matter, following a hearing on May 14, 2010, issued an Order dated May 17, 2010, requiring Schiele and Wait—along with PowerPlus—to return this information and comply with the other terms and conditions of the Order.

**PowerPlus's Possession Of The Information Wrongfully Taken By Schiele and Wait.**

39. As part of its solicitation of JT Packard's employees, PowerPlus has obtained possession and control over more of JT Packard's confidential information and trade secrets, specifically through the actions of its employees Wait and Schiele. As the employer of Schiele and Wait, PowerPlus is obligated to comply with the terms of this Order.

**COUNT I – THEFT OF TRADE SECRETS**

40. JT Packard restates, re-alleges and incorporates herein by reference each of the foregoing paragraphs.

41. By their actions, as stated above, Defendants have stolen JT Packard's trade secrets, in violation of the Wisconsin Uniform Trade Secrets Act.

42. As a result of Defendants' theft of this information, JT Packard has been and will continue to be severely and irreparably damaged.

43. JT Packard does not have an adequate remedy at law for the harm and damage which Defendants' have caused by their actions.

## COUNT II – COMMON LAW MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

44. JT Packard restates, re-alleges and incorporates herein by reference each of the foregoing paragraphs.

45. By their actions, as stated above, Defendants have misappropriated JT Packard's confidential information, in violation of Wisconsin law.

46. As a result of Defendants' theft of this information, JT Packard has been and will continue to be severely and irreparably damaged.

47. JT Packard does not have an adequate remedy at law for the harm and damage which Defendants have caused by their actions.

## COUNT III –CONVERSION

48. JT Packard restates, re-alleges and incorporates herein by reference each of the foregoing paragraphs.

49. Defendants' conduct and actions with respect to JT Packard's confidential information and trade secrets, as described above, constitutes wrongful conversion of JT Packard's property and assets, in violation of Wisconsin law.

50. As a result of the Defendants' wrongful actions, JT Packard has been and will continue to be severely and irreparably damaged.

51. JT Packard does not have an adequate remedy at law for the harm and damage that Defendants have caused by its actions.

## COUNT IV – BREACH OF CONTRACT

52. JT Packard restates, re-alleges and incorporates herein by reference each of the foregoing paragraphs.

53. PowerPlus has breached the terms of the ICA by improperly soliciting JT Packard's Customers, improperly soliciting JT Packard's employees, and (upon information and belief) misappropriating JT Packard's Confidential Information.

54. As a result of PowerPlus's wrongful actions, JT Packard has been and will continue to be severely and irreparably damaged.

55. JT Packard does not have an adequate remedy at law for the harm and damage suffered as the result of PowerPlus's wrongful actions.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT

56. JT Packard restates, re-alleges and incorporates herein by reference each of the foregoing paragraphs.

57. PowerPlus has tortiously interfered with the contracts JT Packard has with its customers (including without limitation the Customers under the ICA) and with its employees.

58. PowerPlus's wrongful actions are without justification and\or privilege.

59. As a direct and proximate cause of PowerPlus's actions, JT Packard has been severely and irreparably damaged.

60. JT Packard will not have an adequate remedy at law for the harm and damage suffered as the result of PowerPlus's wrongful actions.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

61. JT Packard restates, re-alleges and incorporates herein by reference each of the foregoing paragraphs.

62. By its actions described above, PowerPlus has tortiously interfered in the contractual relationships JT Packard has with its employees and customers (including without limitation the Customers under the ICA).

63. PowerPlus's actions were and are not justified or privileged.

64. As a direct and proximate result of PowerPlus's improper interference, without justification or privilege, JT Packard has been severely and irreparably damaged.

65. JT Packard will not have an adequate remedy at law for the harm and damage suffered as the result of PowerPlus's wrongful actions.

## STATEMENT OF IRREPARABLE INJURY TO PLAINTIFF

66. JT Packard has been and continues to be subjected to irreparable injury for which no remedy at law exists.  Given the fierce competition in the power services industry and the sales and revenue at stake, the unlawful actions of PowerPlus and its members, employees and agents are causing and will continue to cause immediate and irreparable harm to JT Packard's business which cannot be adequately remedied by an award of monetary damages.  The actions described herein are causing and will continue to cause JT Packard harm and irreparable damage insofar as that conduct interferes with JT Packard's established business relationships and providing power service and maintenance to customers and prospective customers, interferes with JT Packard's business opportunities, misappropriates JT Packard's trade secrets and confidential business information for the purposes of damaging it competitively in the marketplace, and damages JT Packard's reputation, goodwill and competitive position.  JT Packard will continue to suffer such injury unless PowerPlus and its members, employees and agents are restrained and enjoined from continuing their unlawful actions.

## PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES

WHEREFORE, JT Packard demands the following relief:

      a.    a preliminary and permanent injunction prohibiting PowerPlus from using or disclosing any of JT Packard's trade secrets and\or confidential information (including without limitation the Confidential Information under ICA and the Intellectual Property Rights under the APA);

      b.    a preliminary and permanent injunction prohibiting PowerPlus from duplicating or disposing of any of JT Packard's trade secrets and\or confidential information (including without limitation the Confidential Information under ICA and the Intellectual Property Rights under the APA);

      c.    a preliminary and permanent injunction requiring PowerPlus (and its members, employees and representatives) to return all of JT Packard's trade secrets and\or confidential information (including without limitation the Confidential Information under ICA and the Intellectual Property Rights under the APA);

      d.    a preliminary and permanent injunction requiring PowerPlus to comply with its non-competition and non-solicitation obligations under ICA;

      e.    exemplary damages under Wis. Stat. § 134.90;

      f.    punitive damages, pursuant to common law;

      g.    compensatory damages, in an amount of both the actual loss caused to JT Packard, and the unjust enrichment realized by PowerPlus (including the direct or indirect profits or revenues received by Defendants) from PowerPlus's unlawful activities;

      h.    costs, including reasonable attorneys' fees; and

      i.    such other and further relief as this Court may deem just and equitable.

## **JURY DEMAND**

JT Packard hereby demands a trial by jury for all issues properly triable thereby.

| | |
|---|---|
| Dated: June 7, 2010 | /s/ George R. Wood |
| | George R. Wood (WI # 1073122) |
| | Noah G. Lipschultz |
| | **LITTLER MENDELSON, P.C.** |
| | 1300 IDS Center |
| | 80 South 8th Street |
| | Minneapolis, MN 55402.2136 |
| | Telephone: 612.630.1000 |
| | Facsimile: 612.630.9626 |

**ATTORNEYS FOR PLAINTIFF THOMAS & BETTS POWER SOLUTIONS, LLC**