IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS & BETTS POWER
SOLUTIONS, LLC d/b/a JT PACKARD

        Plaintiffs,

v.                                 Case No.  10-CV-213

S.R. BRAY LLC d/b/a POWERPLUS!,
SANDY SCHIELE, and BEN WAIT,

        Defendants.

## S.R. BRAY LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND TO STRIKE PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(F)

### INTRODUCTION

S.R. Bray LLC ("Defendant" or "SRB") submits this Motion to Dismiss the fourth complaint filed by plaintiff Thomas & Betts Power Solutions, LLC ("Plaintiff" or "TBPS"), entitled Third Amended Complaint filed June 7, 2010 ("TAC" or "Complaint").  The three prior unsuccessful attempts to state viable claims for relief have been supplanted by a Complaint that drops most of the defendants and claims previously asserted and introduces yet another legal theory of alleged wrong-doing by Defendant, but it has no more merit than the earlier iterations. Plaintiff fails to allege facts sufficient to establish a claim that SRB owes a duty to TBPS. Without a legal duty, alleging a breach is nothing more than conclusory rhetoric. TAC does not state a plausible claim for relief against Defendant.

1

Doc. # CC-229856

TAC states two new theories of relief : (1) that Defendant has committed theft or

conversion of assets Defendant purchased seven months before Plaintiff was formed to purchase

assets of JT Packard & Associates, Inc., a Wisconsin corporation ("JTP"); and (2) that Defendant

has breached an Independent Contractor Agreement ("ICA") it executed with JTP months before

Plaintiff acquired those assets of JTP.  Neither theory is legally cognizable.  Neither is plausible

on its face.

Claims carried over from the prior complaints, common law misappropriation of

confidential information and tortious interference with contract, suffer the same or similar

deficiencies.  From the facts alleged, taken as true, there is only an improperly vague

identification of the wrongful conduct, largely dependent upon conclusory allegations of

unlawful acts that are not facially plausible.  These claims fail to meet a fair notice standard,

relying on formulaic recitations of the requisite elements (and at times, not even that), with

insufficient factual allegations to survive this motion.  Competing inferences of either lawful

conduct by Defendant or Plaintiff's own negligence are more compelling and persuasive than

any inference of wrong-doing by Defendant.  Under controlling law, the claims of relief in TAC

must be facially plausible, predicated on adequate factual pleading, but as this motion

demonstrates, that standard is not satisfied, and, after a fourth attempt, Plaintiff's claims must be

finally dismissed.

## SUMMARY OF ALLEGATIONS OF THIRD AMENDED COMPLAINT

On April 19, 2010, TBPS commenced this lawsuit.  Its Complaint [Dkt. 1] named 14

defendants–SRB, James Nolden, Chris Blodgett, Jim Uhalt, Scott Bowman, Patricia Epstein,

Michele Martin, Shane Wolfram, Jennifer Wingert, Sarah Sullivan, Kristi Rue, Samantha Moyes,

John Roidt, and Sandy Schiele ("Schiele").  It asserted that the individual defendants had

breached certain agreements (non-compete, non-solicitation and confidentiality) (collectively,

2

the "Employee Agreements") and SRB had induced them to do so.  It also alleged that certain of

the individual defendants had commenced work for SRB before the end of their employment

with TBPS, had retained certain of TBPS's property after termination of their employment, and

had forwarded to their personal email accounts for use in their SRB employment TBPS emails

containing confidential information.

Based on those alleged activities, TBPS asserted claims against the individual defendants

for breach of contract, tortious interference with contractual relationships, statutory and common

law misappropriation of trade secrets, breach of loyalty, and breach of fiduciary duty, and

Plaintiff further asserted claims against SRB for aiding and abetting breach of fiduciary duty and

breach of duty of loyalty and tortious interference with contractual relationships.

On April 26, 2010, by order of the Court, Plaintiff filed an Amended Complaint [Dkt. 9]

that attempted to address deficiencies in the original Complaint's jurisdictional allegations.  It

also added Ben Wait ("Wait") as a defendant.  Later that same day, TBPS filed a Second

Amended Complaint [Dkt. 15] further directed at the jurisdictional deficiencies.  Finally, on

June 7, 2010, TBPS filed the TAC, which is the subject of this motion to dismiss.

On Plaintiff's motion for a preliminary injunction [Dkt. Nos. 2, 10], defendants

demonstrated the baseless nature of Plaintiff's claims as they existed on May 14, 2010.  Among

other things, defendants established the following:

- Plaintiff never secured a non-compete, non-disclosure or non-

solicitation agreement from SRB and is free to compete.  The Court observed:

> ... I am going to rule at this time. As to the nature of the
> preliminary injunction with respect to S.R. Bray LLC, the reality is
> and it appears undisputed that S.R. Bray LLC has not entered into
> any kind of noncompete, nonsolicitation, nondisclosure; that it is
> free to compete and that at least on the record that we see here with
> respect to the two specific claims against them in the current

Doc. # CC-229856

Complaint, the tortious interference and the aiding and abetting breach, we don't have any direct evidence of either.

May 14, 2010 hearing transcript, pp. 275-276.

TBPS is improperly trying to "correct" though this litigation its transaction decision not to secure a non-compete, non disclosure, and non-solicitation agreement from SRB when Plaintiff acquired assets of JTP. Evidence adduced at the May 14 injunction proceeding is that for several years before that, JTP had been a wholly owned subsidiary of SR Bray Corp. One of the synergies between SR Bray Corp. and JTP was to largely combine two back offices into one office. There, on SR Bray Corp.'s servers, JTP's data was backed up. The two companies had almost identical customer lists and marketed to shared customers. Thus, when SR Bray Corp.'s assets were assigned for the benefit of its creditors to Credit Managers Association ("CMA") (upon which assignment Plaintiff's latest pleading relies; *see* TAC ¶ 11), all the back-up data from JTP was assigned to CMA, and then sold by CMA to Defendant SRB, months before Plaintiff TBPS purchased JTP's assets. *See* TAC, ¶ 12 and Bray Declaration filed herewith, Ex C, tab 6. Yet, even though SRB had acquired these assets of SR Bray Corp. previously, including information about JTP's business, Plaintiff did not seek a standard non-compete agreement from SRB when it bought JTP's assets.

- Plaintiff was not a party (even by assignment or successor in interest status) to the Employee Agreements it was attempting to enforce against the 14 individual defendants in the lawsuit.[1] Rather, it was JTP, not Plaintiff, that

---

[1] If TBPS is a successor to JTP, TBPS would be exposed to potential liability in two other employee class

Doc. # CC-229856

was the employer-party to those agreements. The language in the "APA" (alleged in Paragraph 15 of the TAC) very specifically renounces any successor in interest status. Bjelajac Declaration filed herewith, Ex. B, § 9.12.

- The information Plaintiff was contending was misappropriated through the individual defendants' activities was not proprietary to Plaintiff and, in fact, SRB had purchased from a third party—approximately 6 months before Plaintiff purchased it—the vast majority of JTP's business information. Bray Decl., Ex. C, tab 6.

- Plaintiff decided to sue first and check the facts and law later. Plaintiff's blunderbuss suit swept in Patricia Epstein, who is not even an employee of SRB, and Shane Wolfram, who never signed any of the Employee Agreements. Plaintiff sued individual defendants based on innocent emails that did not contain any of Plaintiff's confidential information, such as Michele Martin's email to herself of a complimentary email from her supervisor.

The Court refused to issue any injunction against defendants James Nolden, Chris Blodgett, Jim Uhalt, Scott Bowman, Patricia Epstein, Michele Martin, Shane Wolfram, Jennifer Wingert, Sarah Sullivan, Kristi Rue, Samantha Moyes, and John Roidt. Although the Court ordered defendants Schiele and Wait to allow TBPS access to their personal computers and email accounts in its Order of May 17, 2010 [Dkt. No. 74], the scope of relief TBPS obtained (especially compared to what it sought in its exaggerated motion) was narrow and surgical. As to SRB, this Court declined to issue any preliminary injunction, as there was absolutely no

---

action lawsuits filed in this Court in 2008 and 2009 ("*Teed v. JTP*" and "*Clay v. JTP*"), which Plaintiff claims are not related cases. *See* Docket 79, p. 6. If TBPS is not a successor as related to employees in the putative class actions, how can it be a successor in interest as related to the allegations herein at Counts V and VI, or as related to the ICA?

Doc. # CC-229856

showing of any wrong-doing by SRB because Plaintiff failed to demonstrate any theory upon which there exists a duty of Defendant to Plaintiff, clearly no irreparable injury, and nothing that might give rise to the extraordinary relief sought by Plaintiff against SRB.

Having substantially failed with its then-existing claims, Plaintiff decided to amend once again. Unsurprisingly, Plaintiff's fourth complaint drops most of the defendants and abandons factual allegations that the employment agreements signed by JTP employees now run in favor of TBPS. These amended claims have no more merit than the earlier claims. The TAC that is the subject of this motion [Dkt. 78] names as defendants only SRB, Schiele and Wait. Gone are any assertions that any defendants breached the Employee Agreements—claims that once stood at the heart of TBPS's lawsuit. Knowing the weakness of its legal position, TBPS has resorted to mining for almost anything on which to try and base a claim. It now alleges that SRB engaged in the following purported misconduct:

- In June 2009, SRB acquired from SR Bray Corp., the CMA, and/or the JTP receivership estate certain of JTP's confidential information, trade secrets and other business information ("the Retained Information" according to the TAC) and SRB possesses and controls the Retained Information and is using it in competition with and to the detriment of Plaintiff. (TAC, ¶¶ 11-12.)

Although the TAC alleges that SRB has no right or authority to possess or use the Retained Information, it does not allege any facts on which that conclusion is based. (TAC, ¶ 19.) For example, the TAC alleges that the June 23, 2009 transfer of assets to SRB was not to include assets used predominantly or exclusively in JTP's business, but nowhere does the TAC allege that the Retained Information was used predominantly or exclusively in JTP's business. (TAC,

6

¶ 12.) This conclusory pleading reveals the weakness of the stated causes of action. The allegation is that a duty of SRB to TBPS somehow arose in January, 2010, not to use lawfully obtained - and paid for – assets SRB acquired from SR Bray Corp. seven months earlier, before Plaintiff even existed. Such a duty requires a new agreement, i.e., an agreement not to compete. <u>The duty does not spring from thin air</u>. Therein lies the defective nature of this new pleading.

Further, the TAC does not even describe the Retained Information except to say it is "certain of JTP's confidential information, trade secrets and other business information." (TAC, ¶ 18.) Nor does the TAC even attach the June 23, 2009 agreement whereby the assets were transferred to SRB. (Defendant does; *see* Bray Decl., Ex. C, tab 6.) Notably, the TAC does not allege that Plaintiff has any right to enforce the terms of the agreement between the seller and SRB. That agreement establishes on its face that Plaintiff is not a party, not a third party beneficiary, and has no standing to raise such a claim. There is not even any allegation of reliance on this agreement by Plaintiff when purchased assets from the receiver for JTP. These omissions are absolutely fatal to the claims that relate to confidential information or trade secrets. No claim for relief by Plaintiff can be predicated on the agreement between CMA and SRB as pled.

- On July 13, 2009, SRB entered into the ICA with JTP, by which SRB was to provide generator services to JTP customers, and TBPS has standing to sue SRB for breach of the ICA because it was "transferred" to Plaintiff pursuant to the January 26, 2010 APA. (TAC, ¶ 22.) The TAC does not attach copies of the ICA or the APA upon which Plaintiff purportedly relies for these

7

assertions. Defendant does. *See* Bjelajac Decl. Exs. A and B. Nor does the TAC allege facts supporting its conclusion that the ICA was effectively "transferred" to Plaintiff pursuant to the APA. On its face, the ICA is unassignable, which explains Plaintiff's failure to attach the document to its pleading. As is immediately apparent from a reading of the ICA, it was intended solely and exclusively for the benefit of JTP, requires both parties' execution of any amendments or modifications (like substituting a party), and specifically omits an assignment clause. Therein, obviously, is a second transactional problem for Plaintiff that it improperly seeks the Court to correct for it through this lawsuit -- Plaintiff failed to secure the consent of SRB to the assignment of the ICA. Without a specific clause permitting JTP to unilaterally assign the ICA, a consent might have remedied the problem and created a contractual duty of SRB to TBPS. But that consent is not alleged and cannot be alleged because no consent was ever secured.

The TAC alleges that SRB has breached the terms of the ICA by improperly soliciting business from Plaintiff's customers and by improperly soliciting Plaintiff's employees to work for SRB, including Schiele, Chris Blodgett, Jim Uhalt, Scott Bowman, Patricia Epstein, Michele Martin, Shane Wolfram, Jennifer Wingert, Sarah Sullivan, Kristi Rue, Samantha Moyes, John Roidt and Wait (TAC, ¶¶ 27-28), but the TAC does not identify which customers SRB supposedly solicited in breach of the ICA and it also does not allege facts setting forth the factual basis for the conclusion that the persons listed were Plaintiff's employees.

Doc. # CC-229856

Further, the ICA on its face shows that the scope of the ICA provisions upon which Plaintiff relies in its TAC are limited to JTP's business. The provisions of the ICA do not extend to Plaintiff's business. Therefore, the TAC's allegations that SRB has competed with Plaintiff, solicited Plaintiff's customers and employees and disclosed Plaintiff's confidential information do not state a claim for breach of any duty of SRB to Plaintiff.

- SRB has engaged in "other" illegal conduct, presumably distinct from SRB's alleged "Theft of JT Packard's Information" and "Breach of the Independent Contractor Agreement" which are described in the first two bullet points above. (TAC, ¶¶ 29-30.) In this regard, TBPS alleges that SRB has misappropriated JT Packard's "Confidential Information," as defined in the ICA, and its "Intellectual Property Rights," as defined in the APA. (TAC, ¶ 29.) As with its other similarly deficient factual allegations, the TAC does not identify the factual basis for its conclusory allegation that such alleged misappropriation occurred. Nor does it identify what particular information was misappropriated. (TAC, ¶¶ 27-28.) Rather, it merely alleges that SRB has interfered with Plaintiff's customer and employment relationships, altogether failing to identify a single one. (TAC, ¶¶ 27-28.) Indeed, the TAC does not even explain how this alleged interference is different from the alleged breaches of the ICA such that it is characterized as "other" illegal conduct.

- On May 17, 2010, the Court ordered SRB to return information taken by Wait and Schiele. (TAC, ¶38.) First, as a matter of judicial notice, the Court's order was not directed at SRB. *See* Docket No. 74. Second, there is no

9

allegation that any of the defendants violated that order; and for good reason. They have not. Accordingly, these allegations cannot support any claim against SRB.

- SRB, "as part of its solicitation of [Schiele and Wait], has obtained possession and control over more of [Plaintiff's] confidential information and trade secrets." (TAC, ¶ 39.) The TAC, however, does not allege any facts supporting this conclusory assertion. It does not identify the alleged solicitation activities at issue, let alone the particular information over which SRB has supposedly obtained possession and control. Nor does the TAC allege such possession and control is even wrongful, let alone why.

Based on all or some (the TAC is unclear in this regard) of the above alleged conduct, the TAC asserts claims against SRB for statutory misappropriation of trade secrets (Count I), common law misappropriation of confidential information (Count II), conversion (Count III), breach of contract (Count IV), tortious interference with contract (Count V), and tortious interference with contractual relations (Count VI).[2]

As explained below, Plaintiff's current pleading fares no better than its three earlier attempts and it should be dismissed or stricken pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f).

---

[2] The TAC alleges that defendants Schiele and Wait, former TBPS employees who are now SRB employees, sent e-mails containing Plaintiff's confidential information to their personal e-mail accounts to access the information outside of TBPS. (TAC, ¶¶ 31, 35, 36.) It further alleges that Wait refused to respond to the litigation hold notice from TBPS and that Schiele participated in an interview with another TBPS employee to recruit that employee to work for SRB and waited until April 20, 2010 to return her company-issued laptop computer to TBPS. (*Id.* ¶¶33, 34, 37.) The TAC asserts against them claims for statutory misappropriation of trade secrets (Count I), common law misappropriation of confidential information (Count II), and conversion (Count III). SRB is authorized to state that defendants Schiele and Wait join in this motion and supporting brief.

Doc. # CC-229856

# ARGUMENT

## I.   A PLEADING THAT OFFERS ONLY CONCLUSORY ALLEGATIONS IS NOT ADEQUATE.

The United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) radically altered the legal landscape surrounding motions to dismiss for failure to state a claim.  While a plaintiff need only "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests" (*Twombly*, 550 U.S. at 555), "a complaint that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'" *Monk v. Luy*, No. 09-CV-646, 2009 WL 5205439, *1 (E.D. Wis. Dec. 23, 2009) (citing *Iqbal*, 129 S. Ct. at 1949).  Under the new standard, a complaint must contain sufficient factual matter, accepted as true, to show that it is "*plausible on its face*." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570) (emphasis added).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  "Plausible" is context specific, and the alleged facts must support inferences more persuasive than competing inferences. *Iqbal*, 129 S. Ct. at 1951.  Such factual allegations "must be enough to raise a right to relief above the speculative level." *Monk*, 2009 WL 5205439, at *1 (quoting *Twombly*, 550 U.S. at 555).  *See also Bissessur v. Indiana Univ. Bd. Of Trustee*, 581 F.3d 599, 603 (7th Cir. 2009) ("'a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail . . . to indicate that the plaintiff has a substantial case.'") (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.  The

Doc. # CC-229856

plaintiff must nudge the facts across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570.

As demonstrated below, the TAC does not meet this pleading standard.

**II.      TBPS DOES NOT PLAUSIBLY ALLEGE ACTUAL DAMAGES CAUSED BY DEFENDANTS.**

To recover damages on any of its claims, TBPS must prove those damages and a causal link between defendants' conduct and that injury. *See, e.g., World Wide Prosthetic Supply, Inc. v. Mikulsky*, 251 Wis. 2d 45, 640 N.W.2d 764 (2002) (plaintiff must show causal connection between misappropriation of *trade secrets* and the harm); *Mercury Record Prods., Inc. v. Economic Consultants, Inc.*, 64 Wis. 2d 163, 174, 218 N.W.2d 705 (1974) (plaintiff must prove "commercial damage" under a *common law misappropriation* claim); *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 400-401, 497 N.W.2d 756 (Ct. App. 1993) (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986)) (causation is an essential element of a *breach of contract* claim); *Production Credit Assoc. of Madison v. Nowatzski*, 90 Wis. 2d 344, 355, 280 N.W.2d 118 (1979) (damages for *conversion* available at the time of conversion "to compensate the plaintiff for the loss sustained because his property was taken"); *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 456, 597 N.W.2d 462 (Ct. App. 1999) (quoted in *Knox Enterprises, Inc. v. Jetzer*, 2010 WL 1881943, at * ___ (Wis. Ct. App. May 12, 2010)) (causal connection must be shown between *tortious interference* and damages).

TBPS fails to adequately plead that Defendant's conduct caused any actual damage to TBPS. While the TAC is replete with conclusory allegations about breach of the ICA by SRB (TAC, ¶¶ 21-28, 52-55), the alleged theft of proprietary information by defendants (TAC, ¶¶ 18-20, 29, 31-37, 39-51), and Defendant's alleged interference with TBPS's employees and customers (TAC, ¶¶ 30, 56-65), it is remarkably short on allegations plausible on their face,

Doc. # CC-229856

*Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570), demonstrating that an actual injury has resulted from this alleged misconduct. The TAC lacks any description of the damages actually suffered by TBPS as a result of defendants' conduct.

Courts in this circuit and elsewhere have applied *Twombly* and its progeny to dismiss claims that fail to plausibly allege an actual injury caused by defendants. *See, e.g, Sharp Electronics Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009)) (citing *Iqbal*, 129 S. Ct. at 1949) (complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Seely v. Adams*, No. 1:09-CV-188 JVB, 2010 WL 1644507, *2 (N.D. Ind. April 22, 2010) (plaintiff's complaint did not show a "causal connection between his alleged injuries and conduct by [the defendant]"); *Cleary v. Phillip Morris USA, Inc.*, No. 09 C 1596, 2010 WL 2555640, *6 (N.D. Ill. June 22, 2010) (plaintiff's complaint failed to "connect" the defendant's actions to "any detriment caused by th[e] alleged wrongdoing"); *Garret v. Dart*, No. 09-cv-1398, 2010 WL 2136670, *6-7 (N.D. Ill. May 26, 2010) (failure to allege facts representing a "causal link" between the defendants and the alleged injuries complained of); *Kim v. Carter's, Inc.*, 598 F.3d 362, 364-66 (7th Cir. 2010) (complaint failed to allege specific facts suggesting that an actual injury was caused by the defendant's misleading label of "Suggested Price" on its retail items); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009) (dismissing RICO claim because conclusory allegations failed to plausibly establish "an injury caused by the use or investment of racketeering income"); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 389-390 (5th Cir. 2009) (plaintiff failed to allege actual, quantifiable damages stemming from alleged breach of fiduciary duty).

TBPS nowhere explains how Defendant's alleged wrong-doing caused it actual harm. Yet, "[s]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff

13

with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 557-558 (quoting *Duran Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Indeed, even if Plaintiff had adequately alleged actual injury here (which it has not), it has utterly failed to plausibly establish that such injury was the result of alleged wrong-doing by Defendant to be distinguished from its own transactional decisions or mistakes (*e.g.*, not to obtain representations and warranties from the JTP receiver that JTP had the exclusive right to possession and use to the business information it was acquiring, not to obtain non-compete, non-solicitation and non-disclosure agreements from SRB, not to obtain SRB's consent to the assignment of the ICA to Plaintiff). Plaintiff's pleading has failed to overcome the competing inference that any supposed injury Plaintiff is suffering is not the result of any wrong-doing by Defendant, but rather the result of its own conduct. This is not sufficient. "If there is an obvious alternative explanation for defendant's conduct, plaintiff must plead additional facts tending to rule out the alternative." *Braden v. Wal Mart Stores, Inc.*, 588 F. 3d 585, 597 (8th Cir. 2009). "An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." *Id.* Based on the factual pleadings of the TAC, is it not plausible that Defendant's calls upon customers SR Bray Corp. shared with JTP are entirely lawful? .Without factual allegations of the nature of the alleged interference, has Plaintiff provided a sufficient basis to rule out lawful conduct in the alternative? The answers are obvious.

In sum, TBPS's inflammatory assertions of misconduct mask the absence of any causal connection between TBPS's legal theories and actual harm. The failure to allege facts showing an actual injury, standing alone, requires dismissal of the TAC.

14

### III.   TBPS HAS NO STANDING TO SUE UNDER THE ICA AND SRB CANNOT HAVE BREACHED IT AS A MATTER OF LAW.

Plaintiff's claims based on the ICA fail as a matter of law, since they are contradicted by the ICA itself (a copy of which is at Ex. A to the Bjelajac Declaration). The ICA shows that: (1) Plaintiff has no right to enforce it; and (2) the contract duties alleged by Plaintiff do not exist. Plaintiff's failure to attach the ICA to its pleading will not save its claims. Notwithstanding Plaintiff's attempt to conceal the meritless nature of its claims by not attaching the ICA (among other agreements it purports to rely upon to fabricate its claims), this Court can and should consider those agreements on this motion to dismiss.

Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim. *See Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F. 2d 429, 431(7th Cir. 1993)(the written contract negotiations attached to the motion to dismiss demonstrated that there was no final enforceable agreement upon which the plaintiff could rely and the district court, therefore, properly dismissed the breach of contract claim). *Cf. Graehling v. Village of Lombard, Ill.*, 58 F. 3d 295, 297 (7th Cir 1995) ("… the complaint show[s] that [the plaintiff] is not entitled to relief [and] has pleaded himself out of court")(brackets added). Thus, where the omitted documents do not support the plaintiff's claim, the claim should be dismissed for failure to state a valid claim. That is exactly the case here.

The following allegations by Plaintiff that are contradicted on the face of the ICA:

1.      *Plaintiff* is a party to the ICA. (TAC, ¶23)

2.      SRB has a duty not to interfere with *Plaintiff's* relationship with any of its customers, nor solicit them.  (TAC, ¶23)

4.      *Plaintiff* is defined as "the current incumbent" in the ICA. (TAC, ¶24)

5.      SRB has a duty not to solicit *Plaintiff's* employees.  (TAC, ¶26)

6.      SRB has breached the ICA by soliciting business from *Plaintiff's* customers and employees. (TAC, ¶¶27, 28 and 62)

7.      SRB has misappropriated *Plaintiff's* Confidential Information, as defined in the ICA. (¶29)

Examination of the actual ICA (Ex. A to the Bjelajac Declaration) demonstrates that Plaintiff's conclusory allegations do not withstand scrutiny.  Plaintiff has no right to enforce ICA against SRB.  It is black-letter Wisconsin law that "only a party to a contract may enforce it." *Sussex Tool & Supply, Inc. v. Mainline Sewer and Water, Inc.*, 231 Wis. 2d 404, 409, 605 N.W.2d 620, 622-23 (Ct. App. 1999).  The ICA was made between SRB and JTP, not Plaintiff. (Ex. A to the Bjelajac Declaration).  Plaintiff is not JTP.  *See, e.g.,* Bjelajac Decl., Ex. B at §9.12 (disavowing the Buyer is successor of the Company).  Thus, Plaintiff is not a party to the ICA.

Plaintiff has not alleged that SRB consented to the assignment of the ICA by JTP. Without such consent, on the face of the ICA, such assignment would be void.  By its very terms (which Plaintiff tries to conceal from the Court), the ICA may not be amended unless both JTS and SRB sign.  The ICA specifically states:

> 22.      **AMENDMENT.**  This Agreement may only be modified in writing, signed by both parties.
>
> 23.      **ENTIRE AGREEMENT.** ...ANY ALTERATIONS OR MODIFICATIONS MUST BE IN WRITING, REFERENCE THIS AGREEMENT, AND BE SIGNED BY BOTH PARTIES DULY AUTHORIZED REPRESENTATIVES.

(Ex. A to Bjelajac Decl.) (Capitals and bold in original.)  Substituting one party, JTP, for another, Plaintiff, is a major modification of an agreement.  Plaintiff failed to get SRB's consent to the alleged "transfer" of the ICA, and that failure renders the TAC's allegations about the ICA false on their face.

Doc. # CC-229856

Regardless of Plaintiff's conclusory allegation that the ICA was "transferred" to Plaintiff pursuant to the APA, such transfer was ineffective without SRB's consent, which consent is not and cannot be alleged. Nothing in the ICA itself authorizes its unilateral assignment by JTP to Plaintiff. Rather, the ICA specifically prohibits it. (Ex. A to Bjelajac Decl., ICA, ¶¶22-23). Further, even if the ICA had not included that specific prohibition against unilateral assignments, the ICA is a personal service contract, which is not unilaterally assignable under Wisconsin law. *See Johnson v. Vickers*, 139 Wis. 145, 120 N.W. 837 (1909); *Tullgren v. School Dist. No. 1 of Village of Whitefish Bay*, 6 Wis. 2d 481, 95 N.W.2d 386 (Wis. 1959).

In sum, notwithstanding the misleading innuendo in the TAC, there is and can be no allegation that SRB ever signed anything consenting to the assignment of the ICA to TBPS by JTP. Thus, the ICA is unenforceable by TBPS and TBPS's contract claim against SRB cannot stand.

Further, even putting aside the contract party issue, examination of the actual ICA demonstrates that Plaintiff's claims of "breach" do not withstand scrutiny. The scope of the ICA provisions upon which Plaintiff relies are limited to *JTP's* business (*e.g.*, competition with JTP, disclosure of JTP's confidential information, solicitation of JTP's customers and employees), to be distinguished from *Plaintiff's* business (*e.g.*, competition with Plaintiff, disclosure of Plaintiff's confidential information, solicitation of Plaintiff's customers and employees). (Ex. A to Bjelajac Decl., ICA, ¶¶12-14 (all referring to "the Company" which the ICA defines as JTP)). Thus, the duties Plaintiff tries to ascribe to SRB arising from the ICA run not to Plaintiff, but to JTP only. Similarly, Plaintiff's allegations of breach and misappropriation fail when the actual terms of the ICA are considered.

Doc. # CC-229856

Plaintiff is not "the current incumbent", the very language it alleges in ¶24 of the TAC, and which appears on the face of the ICA in ¶13. This is very strong language for an agreement and it appears not in the agreement's introduction or recitals, but in the very paragraph 13 upon which Plaintiff relies to seek to enforce JTP's rights. It could not be more evident that the drafter intended the ICA to grant JTP rights that would not be transferrable, and it was executed at a time when the parties knew that JTP's assets would subsequently be transferred. It does *not* say that "Company" is defined as "JT Packard & Associates, Inc., and its successors and assigns". The word "current" makes it clear that "Company" is not to include successors and assigns. Again, by its very terms, the ICA may not be modified unless both JTS and SRB sign the modification. (Ex. A to Bjelajac Decl., ICA, ¶¶22-23).

Fearful this Court may recognize the fatal vulnerability such language presents to its claims, Plaintiff's allegation in ¶24 of the TAC employs the cynical tactic of substitution of "JT Packard" (the defined reference to Plaintiff) in place of "Company," to give the Court the impression that Plaintiff is the "current incumbent" referred in the ICA. Not only is Plaintiff's false allegation belied by the ICA, but when the ICA was signed, Plaintiff did not exist and therefore could not be the "current incumbent" as it was not formed and, at that time, the stock of JTP had been assigned to CMA. (Bray Decl., Ex. C, tab 1.) Defendant asks the Court to consider the improper nature of this misstatement of the contract terms in pleading.

Thus, even if Plaintiff could enforce the ICA against SRB (which it cannot), its theories of breach are inconsistent with the actual terms of the ICA and its breach of contract claims fail as a matter of law. Even if the ICA had been validly assigned to TBPS, the provisions which the TAC claims were breached (*e.g.*, the non-compete, non-solicitation and non-disclosure provisions) are limited to protecting JTP–competition with JTP (which is out of business)(*see*

Brejelac Decl., Ex. B, APA, §6.12), soliciting JTP's customers and employees, and disclosing JTP's confidential information. TBPS is not entitled to simply replace "the Company" with itself every time "the Company" is mentioned in the ICA.    Again, Plaintiff is not JTP –it is not "the current incumbent", the defined term in the ICA. *See, e.g.,* Bjelajac Decl., Ex. B at §9.12 (disavowing the Buyer is successor of the Company). In turn, TBPS's breach-of-the-ICA claim, which purports to be based on competition with TBPS, soliciting TBPS's customers and employees, and disclosing TBPS's confidential information fails to state a claim since the allegations of breach do no match up with the contractual obligations according to the actual provisions of the ICA.

Just as TBPS failed to secure a non-compete agreement from SRB in connection with the APA, TBPS failed to secure a consent to the assignment of the ICA. Plaintiff's attempt to have the Court hoist on SRB such agreements through this litigation when TBPS never secured or paid for SRB for those agreements is unavailing. Plaintiff's claim for breach of the ICA must be dismissed under Fed. R. Civ. P. 12(b)(6) and all attempts by Plaintiff to rely on the ICA in the TAC should be stricken from the TAC as immaterial and impertinent matter under Fed. R. Civ. P. 12(f).

## IV.    THE STATUTORY CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS AND COMMON CLAIM FOR MISAPPROPRIATION FAIL AS A MATTER OF LAW.

Plaintiff's purported misappropriation claims are equally defective. Plaintiff fails to allege facts supporting its conclusions that trade secret and confidential information was misappropriated and even fails to identify the alleged trade secret and confidential information that was allegedly misappropriated. In addition, the TAC does not adequately allege the "misappropriation" element of these claims. Not only is it unclear from the TAC on what alleged conduct the misappropriation claims rely, but each of the possible bases would fail to

constitute misappropriation even if they were relied upon.   What is fatal to these claims is that the *factual* allegations are not sufficient to establish that Defendant's possession or use of the alleged confidential information or trade secrets was unlawful.  Plaintiff has not plead sufficient facts to move its claims from conceivable to plausible, as is required by controlling law (*see supra*, Section I).

First, Plaintiff fails to allege facts supporting its conclusions that trade secret and confidential information was misappropriated.  For example, Plaintiff fails to allege that the alleged misappropriated information derives independent economic value from not being generally known and is not readily ascertainable by proper means and that it was subject to reasonable efforts to maintain its secrecy (*see* Wis. Stat. §134.90), let alone facts supporting such conclusions. *ECT International, Inc. v. Zwerlein*, 228 Wis. 2d 343, 597 N.W.2d 479, 482 (1999)(the elements of Section 134.90 are "nothing more than legal conclusions"; a plaintiff must allege "ultimate facts showing existence of a trade secret").  Similarly, the TAC does not allege any facts supporting that any information supposedly misappropriated was "confidential." Plaintiff alleges that Defendant acquired -- through a June 2009 transaction with CMA (SR Bray Corp.'s assignee) -- the "confidential" information seven months *before* it was acquired by Plaintiff.  (TAC ¶ 12)  Just how "confidential" could it be, taking the allegation at face value? The logical inference is that the information Plaintiff now claims was confidential to itself was not confidential from CMA or SR Bray Corp., let alone from Defendant.  This is an utter failure to meet *Twombly/Iqbal* pleading standards.

Second, Plaintiff fails to identify adequately the alleged trade secret and confidential information that was allegedly misappropriated as required by law. "[T]he plaintiff must do more than direct the court to a broad area of [information] and assert that something there must have

Doc. # CC-229856

been secret and misappropriated. The plaintiff must point to concrete secrets." *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595 n. 2 (7th Cir. 2001)(citations omitted). *See also IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 816 (W.D. Wis. 2001)(plaintiff must particularize the information it seeks to protect and has the burden to specify its trade secrets), *affirmed in part and reversed in part by* 285 F.3d 581 (7th Cir. 2002). On appeal, the Seventh Circuit Court of Appeal stated:

> Thus to show that particular information is a trade secret, … IDX must demonstrate that it is valuable, not known to others who might profit by its use, and has been handled by means reasonably designed to maintain secrecy. Like the district judge, we think that IDX failed to do this. It has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret. *That's not plausible* — and, more to the point, such a broad assertion does not match up to the statutory definition.

285 F.3d at 583 (emphasis added). This certainly harkens back to *Twombly*. Thus, "[g]eneral allegations of the existence of trade secrets will not suffice – a reasonable degree of precision and specificity is necessary." 165 F.Supp.2d at 816 (citation omitted).[3]

The Seventh Circuit Court of Appeals explained the purpose of this requirement in the *3M* case:

> Because the purpose of trade secret law is to encourage innovation and development, protection should not extend beyond the limits needed to protect genuine trade secrets . . . . *The umbrella of trade secret classification should not be deployed to suppress legitimate competition* . . . .

---

[3] Although *IDX* was in the procedural posture of a summary judgment motion, the district court opinion does address the burden at the pleading stage. Judge Shabaz observed that at the complaint stage, plaintiff cannot be expected to plead its trade secrets in such detail that a public disclosure would amount to an effective surrender of trade secret status. 165 F.Supp.2d at 816. Judge Shabaz noted that a protective order must be in place before that level of detail is required. *Id.* But, here Defendant is not requiring Plaintiff to disclose in its pleading the content of the allegedly misappropriated information. Instead, Plaintiff's pleading must identify what the allegedly misappropriated information is without disclosing the substantive content. It fails to do so. This is critical here since it cannot be disputed that certainly the vast majority of the JTP business information Plaintiff acquired from the JTP receiver was not confidential (at least not from SR Bray Corp. who assigned it to CMA who sold it to SRB).

259 F.3d at 595, n. 2 (citations omitted; emphasis added.)

Accordingly, Plaintiff's misappropriation claims fail because not only is the alleged misappropriated information not specifically identified, but the legal conclusions that the information is secret or even confidential are not supported by any factual allegations. Without that information, defendants cannot meaningfully respond to Plaintiff's pleading, let alone prepare a defense to it. *See International Harvester Co. v. General Ins. Co. of America*, 45 F.R.D. 4, 6-7 (E.D. Wis. 1968)("other property" too indefinite to adequately allege the property misappropriated).

Third, the TAC does not adequately allege the "misappropriation" element of these claims. It is unclear from the TAC what alleged conduct is challenged by the misappropriation claims (*e.g.*, SRB's acquisition, possession, control, and use of the Retained Information versus SRB has engaged in "other" illegal conduct versus SRB's possession and control over other unspecified confidential information through its solicitation of Schiele and Wait versus Schiele's and Wait's transmission of emails to their personal accounts versus some other alleged conduct that defendants have not managed to glean from Plaintiff's vague and confusing if not unintelligible pleading).

Further, even if TBPS were able to prove facts consistent with what is alleged, Plaintiff would still come up short on claims for misappropriation. SRB's acquisition, possession, control, and use of the Retained Information does not satisfy Section 134.90's definition of "misappropriation." SRB's alleged breach of the ICA would be insufficient as well. The TAC does not allege use or disclosure of any actual trade secrets or confidential information in breach of the ICA and, moreover, Plaintiff cannot rely on the ICA in any event. *See supra* Section III.

22

In addition, Plaintiff's allegations do not demonstrate that misappropriation is more plausible than not. An allegation of "behavior" that "is just as consistent with lawful conduct as it is with wrongdoing is too vague to provide notice to defendants of the contours of [the claim]." *Brooks v. Ross*, 578 F.3d 574, 581-582 (7th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Geracie v. Muskego Police Dept.*, No. 09-CV-1048, 2009 WL 3837613, *2 (E.D. Wis. Nov. 16, 2009) (citing *Iqbal*, 129 S. Ct. at 1950). In short, allegations "consistent with [wrong-doing], but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market," no longer suffice for plaintiffs seeking to avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 554 (quoted in *Brooks*, 578 F.3d at 581) (brackets added). Plaintiff's failure to allege plausible misappropriation is explained at length below.

The critical factual allegations to determine whether the TAC states a claim of misappropriation are as follows:

      1.     Plaintiff and Defendant are direct competitors. (TAC, ¶¶2, 7, 8)

      2.     SR Bray Corp. formerly owned JTP. (TAC, ¶11)

      3.     SR Bray Corp. assigned its assets to CMA and CMA "transferred" a portion of SRB's assets to Defendant, not including "all of the assets of SRB[ray Corp.] used predominately or exclusively in JTP's business." (TAC, ¶12)[4]

---

[4] The use of the word "transferred" demonstrates Plaintiff's slight of hand and is intended to conceal the fact that Defendant paid significant consideration for those assets many months before Plaintiff even existed, much less made its purchase of assets. *See* Bray Decl., Ex. C, tab 6.

The TAC further alleges that Defendant's use of JTP's business information is unlawful; however, a competing inference is that Defendant purchased those assets from CMA and acquired a lawful right to use them. That competing inference arises not only from the inadequate pleading, but also from the agreement by which the transaction occurred – *see* Bray Decl., Ex. C, tab 6. That document demonstrates that Defendant did purchase such assets and lawfully acquired the right to JTP's business information well before Plaintiff purchased any JTP assets and Plaintiff failed to secure a non-compete agreement from Defendant.

4.      Through a Wisconsin receivership, Purchased Assets of JTP were sold to Plaintiff.  (TAC ¶15)

5.      The Purchased Assets included intellectual property rights of JTP.  (TAC ¶¶16-17)

6.      SR Bray Corp. copied the intellectual property of JTP and Plaintiff did not know this. That same intellectual property was transferred to CMA, by CMA to the JTP receivership estate, and then to Plaintiff.  (TAC ¶18)  Is there not a competing inference with respect to this allegation that Plaintiff failed to adequately perform due diligence prior to its purchase or failed to secure adequate representations from the seller?

7.      The intellectual property has been acquired by Defendant and remains in its possession and control, and is being used in its business competition with and to the detriment of Plaintiff.  (TAC ¶¶19-20)

Allegations noted in Paragraphs 6 and 7 above are fatally flawed. From Plaintiff's allegations, taken as true, there naturally arises another competing inference: SR Bray Corp., the parent of JTP, a 100% owner of that company, including its intellectual property, possessed and controlled that information lawfully, and sold it via a lawful assignment for benefit of creditors

Doc. # CC-229856

to Defendant, thus passing to Defendant the lawful right to use such assets, and all of this occurred many months before Plaintiff acquired any right to such property. *See* Bray Decl., Ex. C, tab 6. Moreover, the right Plaintiff acquired is not alleged to be exclusive. Again, "[i]f there is an obvious alternative explanation for defendant's conduct, plaintiff must plead additional facts tending to rule out the alternative" (*Braden v. Wal Mart Stores, Inc.*, 588 F. 3d 585, 597 (8th Cir. 2009)) and "[a]n inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged" (*Id.*). Here, Plaintiff has failed to plead additional facts ruling out the obvious alternatives that SRB is in rightful possession of the JTP business information and that Plaintiff's right to possession of that information is non-exclusive.

In addition, the allegation that the intellectual property is being used in competition with Plaintiff does not state a claim for relief. It is too vague: how is such being used? What is being used? If, for example, customer lists are being used by Defendant, on its face such an allegation would be insufficient factually and as a matter of law. Defendant purchased the assets of a company that shared information with JTP and serviced the same customers in a non-competitive manner. Where do we find an allegation that customer lists are intellectual property to which Plaintiff is entitled exclusive possession and control? Nowhere. Where is the fair notice in these pleadings required by *Twombly*? Nowhere. Similarly, where is there an allegation the Plaintiff's alleged lack of knowledge that SR Bray Corp. copied JTP's intellectual property was the result of wrong-doing (rather than its own negligence), let alone wrong-doing by Defendant? Nowhere. Here, Plaintiff has failed to plead additional facts ruling out the obvious alternatives that SRB is in rightful possession of the intellectual property and that Plaintiff's right to that intellectual property is non-exclusive.

Doc. # CC-229856

8.    From the foregoing factual allegations, Plaintiff alleges (TAC ¶19) that Defendant "has no right or authority to possess or use" the intellectual property.

This is a conclusion, and it is not based on any factual allegation of wrong-doing by Defendant. Only factual allegations, not conclusory allegations, suffice in showing a plausible claim. Based on the operative facts alleged by Plaintiff, no cognizable claim for relief is or can be made against Defendant. The transaction by which Plaintiff acquired the intellectual property did not involve Defendant. It must be noted that there is no allegation that Defendant made any representations to Plaintiff about the intellectual property – or anything else. In fact, the logical conclusion of the allegation in TAC ¶15 that Plaintiff bought the property at auction is that Plaintiff acquired the property "as is", flaws and all, or that prior to the sale, Plaintiff failed to take ordinary due diligence precautions as to the confidential nature of the information it was acquiring. A review of the APA confirms that is exactly what happened. *See, e.g.*, Bjelajac Decl., Ex. B, APA, §4.01(l)(representations and warranties about intellectual property transferred) and §4.01(l)(ii) of JTP's Disclosure Schedule purporting to list the material Transferred Intellectual Property Rights (limiting them to a trademark and URL's). Again, Plaintiff has failed to plead additional facts ruling out the obvious alternatives that SRB is in rightful possession of the intellectual property it possesses and that Plaintiff's right to that intellectual property it received was non-exclusive. The competing inferences are Defendant's alleged wrongful possession and use, on the one hand, and, on the other, the failure of Plaintiff to conduct itself in accordance with standard procedures employed when buying a company. The factual allegations do not make the former more plausible.

Accordingly, these claims fail because not only is misappropriation not adequately alleged and supported with factual allegations, but the TAC is so vague as to the alleged basis of

Doc. # CC-229856

these misappropriation claims that Defendants cannot meaningfully respond to Plaintiff's

pleading, let alone prepare a defense to it. *Brooks v. Ross*, 578 F.3d 574, 581-582 (7th Cir.

2009)(vague phrasing that "one or more of the Defendants" had engaged in certain acts or

deprived Plaintiff of his constitutional rights failed to adequately connect specific defendants to

illegal acts). In addition, Plaintiff's amorphous claim of misappropriation lacks the requisite

plausibility. In sum, the statutory and common claims for misappropriation should be dismissed.

## V.    THE CONVERSION CLAIM SHOULD BE DISMISSED.

For similar reasons, Plaintiff also fails to state a claim for conversion. Not only does

Plaintiff fail to identify what has been converted by Defendant, it critically fails to allege that any

of Defendant's conduct deprived TBPS of the possession of any allegedly converted property.

Being deprived of a mere copy of information or documents is not sufficient to state a claim for

conversion. This is pleading on a speculative level, insufficient to withstand this motion.

TBPS alleges Defendant converted "confidential information and trade secrets" (TAC,

¶ 49), but fails to allege facts supporting the conclusory statement that a conversion occurred.

We know from allegations in TAC, ¶ 12 that Defendant acquired the information from CMA in

June 2009, but tellingly there is no allegation that the sale by CMA to Defendant was unlawful or

even concealed from Plaintiff. This allegation at ¶ 49 of the TAC would lead to an inference that

Defendant converted property it purchased over six months before TBPS had any alleged claim

to such property. Such an untenable inference does not pass muster under the *Twombly/Iqbal*

pleading standard.

Plaintiff not only fails to identify the specific alleged conduct underlying the conversion

claim or why defendants should be liable for one another's conduct, but Plaintiff also fails to

allege that any of defendants' conduct deprived TBPS of the possession of allegedly converted

Doc. # CC-229856

property.[5]  Being deprived of a mere copy of a document or information is not sufficient to state

a claim for conversion.   *FMC Corp. v Capital Cities/ABC Incorp.*, 915 F.2d 300, 303 (7th Cir.

1990)(the district court was correct in ruling "the receipt of copies of documents, rather than the

documents themselves, should not ordinarily give rise to a claim for conversion.")  As the Court

of Appeals explained:

> [T]he reason for this rule is that possession of copies of
> documents-as opposed to the documents themselves-does not
> amount to an interference with the owner's property sufficient to
> constitute conversion . . . in the cases where the alleged converter
> has only a copy of the owner's property and the owner still
> possesses the property itself, the owner is in no way being deprived
> of the use of his property. The only rub is that someone else is
> using it as well.

915 F. 2d at 303.  Because Plaintiff has not (and cannot) allege that defendants have deprived it

of the possession of any property, the Court should dismiss Plaintiff's conversion claim, which is

really just a defective misappropriation claim.

## VI.    THE CLAIMS FOR TORTIOUS INTERFERENCE FAIL AS A MATTER OF LAW.

Plaintiff's claims for interference are so vague and confusing that they do not permit

Defendant to meaningfully respond to them or to prepare their defense.  First, Defendant is at a

loss as to the intended difference between Count V and Count VI and between contracts and

contractual relations.  Second, Plaintiff fails to identify the specific customer and employee

contracts and contractual relations with which Defendant has allegedly interfered.  Post

*Twombly*, such specific allegations are particularly critical because Plaintiff has routinely relied

---

[5] To the extent that Plaintiff is relying upon SRB's acquisition of Retained Information through the June 23, 2009 transaction (TAC, ¶ 12)(Bray Decl., Ex. C, tab 6), such a conversion claim would fail because Plaintiff was not entitled to possession of the Retained Information at that time. *See In re Jorenby*, 393 B.R. 663, 664-65 (W.D. Wis. 2008)("the plaintiff 'must allege . . . that it was in possession of the chattel at the time of the conversion or that it was entitled to immediate possession'")(citing *Production Credit Association v. Equity Coop Livestock Sales Association*, 82 Wis. 2d 5, 10, 261 N.W.2d 127 (Wis. 1978).  At best, Plaintiff acquired its alleged rights to the Retained Information over six months later on January 26, 2010.  (TAC, ¶ 15)(Bjelajac Decl., Ex. B).

Doc. # CC-229856

upon in this litigation contracts that it has no right to enforce.  Third, Plaintiff fails to allege the

nature of the alleged interference, let alone any factual underpinnings for its legal conclusion that

there has been tortious interference.  This utter lack of detail is significant because, among other

reasons, certain "interference" is not actionable. S*ee, e.g., Liebe v. City Finance Company*, 98

Wis. 2d 10, 13, 295 N.W.2d 16 (Ct. App. 1980)(transmission of truthful information is

privileged).

Further, Plaintiff has even failed to allege the requisite elements of its interference

claims.  Tortious interference with a contract occurs when someone intentionally and improperly

interferes with the performance of a contract between another and a third person by inducing or

otherwise causing the third person not to perform the contract.  *Wausau Med.Ctr. v. Asplund*, 182

Wis. 2d 274, 297, 514 N.W.2d 34, 44 (Ct. App. 1994); *Cudd v. Crownhart*, 122 Wis. 2d 656,

660, 364 N.W.2d 158, 160 (1985)(intent is a requisite element).  The TAC fails to allege any

non-performance or breach of a contract by a third party, let alone intentional and improper

conduct by Defendant.

Where there has been no alleged actual breach of a contract with a third party, a plaintiff

seeking to maintain a claim for tortious interference must show some specific right which has

been interfered with.  *Sampson Invs. v. Jondex Corp.*, 176 Wis. 2d 55, 72-73, 499 N.W.2d 177,

184 (1993).  There, the Supreme Court of Wisconsin rejected an interference counterclaim:

> Even where there has been no breach of a contract, a plaintiff
> seeking to maintain a claim for tortious interference with contract
> must show some specific right which has been interfered with. In
> the present case, however, Sampson had no right to require Jondex
> to continuously operate a retail warehouse food store. Thus, even
> though Jondex refrained from using the premises, this action did
> not interfere with any of Sampson's rights. In fact, allowing
> Sampson's claim would grant them rights which the parties did not
> bargain for. The inability to show any right which was interfered
> with is fatal to Sampson's tortious interference claim.

Doc. # CC-229856

*Id.* The TAC fails to allege any specific rights of Plaintiff's with which Defendant allegedly interfered and this Court should reject Plaintiff's interference claims.

Because Plaintiff has not adequately alleged that Defendant has interfered with any contracts or contractual relations with any third parties—even after four opportunities to do so— the Court should dismiss Plaintiff's interference claims.

## VII.   FURTHER LEAVE TO AMEND SHOULD NOT BE GRANTED.

The Scheduling Order in this case provides that further amendment to the pleadings shall be allowed only by leave of court. (6/18/10 Scheduling Order [Dkt. 80], ¶ 1.)  Although a court may grant a party's motion for leave to amend when justice so requires, "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.*" *Foman v. Davis*, 371 U.S. 178, 183, 83 S. Ct. 227 (1962) (emphasis added). Federal courts have refused to allow a party to amend its complaint where the party has been given several prior opportunities to remediate deficiencies but failed to do so. *Villa v. Chicago*, 924 F. 2d 629 (7th Cir. 1991); *Franklin v. Beth*, 2007 U.S. Dist. LEXIS 63609 (E.D. Wis. 2007) (refusing to grant leave to amend where the plaintiffs had twice unsuccessfully attempted to cure deficiencies).  Although leave to amend is generally liberally granted, the right to amend is not absolute.  The decision to deny such requests is in the sound discretion of the Court. *See Mertens v. Hummell*, 587 F. 2d 862 (7th Cir. 1978).

Leave to amend in this case should not be afforded.  This is already Plaintiff's fourth attempt at pleading its claims and a schedule is already in place setting trial less than a year away.  Permitting Plaintiff yet another opportunity to change its claims would, therefore, be unduly prejudicial to defendants. Moreover, any claims based on the ICA would be futile since,

Doc. # CC-229856

as explained above, as a matter of law, Plaintiff cannot rely on the ICA. Therefore, to the extent that the Court is inclined to grant any leave to amend with respect to the non-ICA claims, leave to amend should be limited to permitting Plaintiff to supply the missing allegations for its existing claims to the extent it can do so consistent with Fed. R. Civ. P. 11 (*e.g*, alleging with particularity the alleged trade secrets and confidential information misappropriated, alleging with particularity the alleged property converted, alleging with particularity the alleged conduct constituting misappropriation, interference and conversion, etc.). Plaintiff should not be permitted to add any new claims.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the TAC in its entirety or, alternatively, strike any and all impertinent allegations and otherwise require TBPS to file a fifth pleading to provide sufficient definition to its deficient claims.

**STEPTOE & JOHNSON LLP**

*s/ Richard G. Reinis*
Richard G. Reinis
Rebecca Edelson
2121 Avenue of the Stars, Suite 2800
Los Angeles, California  90067-5052
Telephone:  310.734.3200
Facsimile:  310.734.3300
Email: rreinis@steptoe.com
   and  redelson@steptoe.com
***ATTORNEYS FOR DEFENDANT***
***S.R. BRAY LLC***